

*[Handwritten annotations:]* premotion conference on March 7, 2008 at 10:45am. Plaintiff's counsel should respond to defendants' counsel letter of Feb 19 by February 27. SO ORDERED. /s/ USDJ 2-20-08

COVINGTON & BURLING LLP

1201 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20004-2401
TEL 202.662.6000
FAX 202.662.6291
WWW.COV.COM

WASHINGTON
NEW YORK
SAN FRANCISCO
LONDON
BRUSSELS

RICHARD L. RAINEY
TEL 202.662.5441
FAX 202.778.5441
RRAINEY@COV.COM

February 19, 2008

*[Stamp: FEB 20 2008]*

BY HAND DELIVERY

Honorable P. Kevin Castel
United States District Court for the Southern District of New York
500 Pearl Street, Room 2260
New York, New York 10007

Re:   *Genoa Color Technologies, Ltd. v. Mitsubishi Electric Corp., et al.*, No. 07-6233

Dear Judge Castel:

The Samsung Defendants and Mitsubishi Defendants are each filing today requests for *inter partes* reexamination with the United States Patent and Trademark Office ("PTO") regarding U.S. Patent No. 7,113,152 (the "'152 patent"). *See* 35 U.S.C. § 311. These requests will almost certainly result in the commencement of a reexamination proceeding in the PTO: out of 126 requests for *inter partes* reexamination filed in Fiscal Year 2007, the director of the PTO denied only one request.[1] On behalf of the Samsung and Mitsubishi Defendants, we write, pursuant to Your Honor's Individual Practices regarding pre-motion conferences, to request permission to move to stay these proceedings pending completion of the *inter partes* reexamination.[2]

As background, in 1980 Congress created "the *ex parte* reexamination process . . . [u]nder [which] a third party c[an] challenge the validity of a patent by notifying the Patent Office of issues bearing on the validity of the patent." *Cooper Tech. Co. v. Dudas*, 2007 WL 4233467, at *1 (E.D. Va. Nov. 30, 2007). "[B]y allowing reexamination in limited circumstances, Congress wanted to reinforce confidence in patents by providing a body having expertise to settle validity disputes more quickly and cheaply than would litigation." *In re Hiniker Co.*, 150 F.3d 1362, 1367 (Fed. Cir. 1998). In 1999, in a further effort to "reduce costly invalidity litigation in district courts by funneling these disputes [on validity] to the Patent Office," Congress "created the *inter partes* reexamination procedure," *Cooper*, 2007 WL 4233467, at *1—the type of reexamination being

---

[1] United States Patent and Trademark Office, Performance and Accountability Report Fiscal Year 2007: Table 13B—Inter Partes Reexamination (2007), http://www.uspto.gov/web/offices/com/annual/2007/50313b_table13b.html.

[2] Samsung and Mitsubishi understand that Texas Instruments Inc. has also filed a reexamination request challenging the validity of the '152 patent. Samsung and Mitsubishi have each notified Plaintiff Genoa Color Technologies, Ltd. ("Genoa") of their intention to file reexamination requests and seek a stay of the litigation.

**MEMO ENDORSED**

COVINGTON & BURLING LLP

February 19, 2008 								Page 2

initiated here. An *inter partes* reexamination allows the requestor to participate in reexamination proceedings by arguing its position before the PTO. *See id.* In exchange for being allowed to participate, a party requesting *inter partes* reexamination is "estopped from asserting at a later time . . . the invalidity of any claim finally determined to be valid and patentable on any ground which the third-party requester raised or could have raised . . . ." 35 U.S.C. § 315(c). That is, the reexamination will bind the Samsung and Mitsubishi Defendants in future litigation on validity.

Stays pending reexamination are the norm. "[T]here is no question that a district court in which an infringement action has been filed has the discretion to stay the infringement action pending the outcome of the reexamination proceeding." *Softview Computer Prods. Corp. v. Haworth, Inc.*, 2000 WL 1134471, at *2 (S.D.N.Y. Aug. 10, 2000) (*citing Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)); *accord Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). A stay is warranted in this case for several reasons:

- A stay would conserve this Court's resources, as the PTO can use its expertise to efficiently resolve this case's complex validity issues, discussed below. The reexamination will result in one of three outcomes: the cancellation or modification of all of the '152 patent claims, the cancellation or modification of fewer than all claims, or the affirmance of all claims. The Defendants believe that reexamination will result in the cancellation of all claims and the effective end of this litigation. Nonetheless, if any part of the patent survives the reexamination, the parties and this Court would have the benefit of the PTO's expert evaluation and the issues pending would be greatly reduced. Absent a stay, the Court might have to redo claim construction and motions practice in light of the reexamination.[3]

- In creating the *inter partes* reexamination mechanism, Congress intended that courts liberally use their discretion to stay proceedings pending reexamination: "[The stay] power already resides with the Court to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure. It is anticipated that these measures provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner." H.R. Rep. No. 96-1307, at 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460, 6462, 1980 WL 12929. Thus, "[c]ourts frequently note that '[t]he legislative history surrounding the establishment of the reexamination proceeding evinces congressional approval of district courts liberally granting stays.'" *eSoft, Inc. v. Blue*

---

[3] *See Gould*, 705 F.2d at 1342 (the purpose of reexamination is to "eliminate trial of [a validity] issue (when the claim is canceled) or to facilitate trial of [a validity] issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)"); *Softview*, 2000 WL 1134471, at *3 ("I[t] would be a serious waste of both the parties' and the Court's resources if the *Markman* and summary judgment proceedings went forward and the claims were subsequently declared invalid or were amended as a result of the reexamination proceeding."); *Middleton, Inc. v. Minn. Mining & Mfg. Co.*, 2004 WL 1968669, at * 3 (S.D. Iowa Aug. 24, 2004) ("[T]he technical expertise provided by the reexamination proceeding will be helpful to the Court on any issues that remain.").

COVINGTON & BURLING LLP

February 19, 2008                                                             Page 3

*Coat Sys., Inc.*, 505 F. Supp. 2d 784, 786 (D. Colo. 2007) (*quoting Robert H. Harris Co. v. Metal Mfg. Co.*, 19 U.S.P.Q.2d 1786, 1788 (E.D. Ark. 1991)).[4]

- Courts routinely grant stays pending reexamination. *See Graham-White Mfg. Co. v. Ell-Con Nat., Inc.*, 2006 WL 2716439, at *2 (D.S.C. Sept. 22, 2006) ("District courts routinely grant a stay of proceedings pending reexamination, recognizing the many benefits and advantages that a stay provides."). "This liberal policy [in favor of staying litigation pending reexamination] exists in large part because of the 'simplification of litigation that might result from the cancellation, clarification, or limitation of claims[;] even if the reexamination did not lead to claim amendment or cancellation, it could still provide valuable analysis to the district court.'" *Cima*, 2007 WL 1672229, at *9 (quoting *Ethicon*, 849 F.2d at 1428).[5]

- Because an *inter partes* reexamination is binding on the parties, *see* 35 U.S.C. § 315(c), PTO proceedings will resolve or drastically narrow the invalidity issues in this case in a binding fashion. "[O]ther courts have recognized that an *inter partes* reexamination can have no other effect but to streamline ongoing litigation" because, with *inter partes* reexamination, "there is a high likelihood . . . that final, binding results of the reexamination proceedings at issue . . . w[ill] have a dramatic effect on the issues before the court." *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 2007 WL 2990152, at *1 (N.D. Cal. Oct. 11, 2007) (quotation marks and alterations omitted; collecting citations).

- Courts particularly favor stays pending reexamination in cases like this one, where the case remains in its early stages. *See Lincoln Elec.*, 2007 WL 2670039, at *4 ("a stay is justified because a stay will simplify the issues in question and the trial of the case, discovery has just begun, and no trial date has been set"); *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994) (granting stay because "the parties are in the initial stages of the lawsuit and have undertaken little or no discovery").

---

[4] For several examples in the past year alone of courts staying litigation pending *inter partes* reexamination of validity issues, see *Lincoln Elec. Co. v. Miller Elec. Mfg. Co.*, 2007 WL 2670039 (N.D. Ohio Sept. 7, 2007); *Cima Labs, Inc. v. Actavis Group HF*, 2007 WL 1672229 (D.N.J. June 7, 2007); *eSoft, Inc. v. Blue Coat Sys., Inc.*, 505 F. Supp. 2d 784 (D. Colo. 2007); *Intermotive, Inc. v. Inpower, LLC*, 2007 WL 46052 (E.D. Cal. Jan. 5, 2007). While one district tends to have been more reluctant to grant stays, *see Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660 (E.D. Tex. 2005), even that court has recognized the propriety of a stay pending an *inter partes* reexamination, in which the requestor is bound by the outcome, *see EchoStar Tech. Corp. v. TiVo, Inc.*, 2006 WL 2501494, at *3 (E.D. Tex. July 14, 2006).

[5] Plaintiffs often oppose stays on the grounds that a stay pending reexamination may take time. But Congress has addressed this issue already by requiring the PTO to conduct reexaminations "'with special dispatch.'" *Cima Labs*, at *9. (quoting 35 U.S.C. § 305 (regarding *ex parte* reexamination)); *see* 35 U.S.C. § 314(c) (requiring *inter partes* reexamination proceedings to be "conducted with special dispatch"); 37 C.F.R. § 1.937(a) (same); *see also Ethicon*, 849 F.2d at 1426 ("special dispatch" requires "unique, extraordinary, or accelerated movement").

COVINGTON & BURLING LLP

February 19, 2008　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 4

There are serious and complex questions of invalidity surrounding the '152 patent that will benefit from the PTO's considerable expertise. The '152 patent claims a method of producing an image by using a "color wheel having at least four non-white and non-black color filters." '152 patent, claim 1. The '152 patent on its face acknowledges that color wheels using *three* colors have long been known in the art. *See, e.g.*, '152 patent, col. 2, ll. 48-50. The patent then describes the use of *four* non-white and non-black colors in a color wheel as a novel idea. It is not.

Defendants have discovered and disclosed to Genoa a number of prior art references that teach Genoa's purported invention prior to its earliest asserted invention date of February 2000, as disclosed in its Amended Infringement Contentions. For example, an article published on November 9, 1999, by Masahiro Yamaguchi entitled "Multiprimary Color Displays" ("Yamaguchi") describes the use of a seven-color color wheel and a method of converting three-color data into image data representing a color image in terms of more than three colors. The following figures from the article are illustrative of Yamaguchi's teachings in this regard:



$$\begin{pmatrix} C_x \\ C_y \\ C_z \end{pmatrix} = \sum_{j=1}^{N} \alpha_j \begin{pmatrix} \int \{S_j(\lambda) + \beta(\lambda)\} X(\lambda) d\lambda \\ \int \{S_j(\lambda) + \beta(\lambda)\} Y(\lambda) d\lambda \\ \int \{S_j(\lambda) + \beta(\lambda)\} Z(\lambda) d\lambda \end{pmatrix} = \sum_{j=1}^{N} \alpha_j P_j + B \quad (2)$$



Yamaguchi is not alone in its disclosure of the invention claimed in the '152 patent. Mitsubishi's own U.S. Patent No. 6,674,489 ("Kagawa"), filed on August 6, 1999, also clearly discloses a six-color wheel (4), a light source (3), a light valve (103) (which Kagawa explains may be a DMD), a viewing screen (104), and the other elements of the '152 patent, as illustrated by Figure 7 from Kagawa, displayed on the right.

Defendants have discovered several other references that disclose the same and which were not considered by the PTO when it allowed the claims of the '152 patent to issue. Defendants would be happy to submit to the Court their Invalidity Contentions, which describe these references and others, and to offer further briefing on the serious questions of invalidity surrounding the '152 patent. Defendants suggest, however, that

COVINGTON & BURLING LLP

February 19, 2008 Page 5

courts routinely enter stays pending *inter partes* reexamination precisely so that the PTO can resolve all such questions in a single, cost-effective, and dispositive forum.

In determining whether to enter a stay, courts often apply a four-factor test: "(1) whether a stay will simplify the issues in question and streamline the trial; (2) whether discovery is complete and whether a trial date has been set; (3) whether a stay would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (4) whether a stay will reduce the burden of litigation on the parties and on the court." *eSoft*, 505 F. Supp. 2d at 787. All four factors heavily counsel in favor of a stay here.

All defendants will be bound by the *inter partes* reexamination and the reexamination will resolve validity issues in a binding fashion.[6] This case is in the very early stages of discovery, with some documents having been exchanged pursuant to document requests, no other written discovery having occurred, and no depositions having taken place. A stay provides no unfair advantage for either party, as all parties will be bound by the results reached by the PTO and the validity issues in this case will be resolved by the PTO regardless of whether the litigation is stayed. Thus, a stay will reduce the burden on all parties and the Court, and allow the validity issues in this case to be resolved as Congress anticipated.

Defendants respectfully request that a stay be entered pending completion of the reexamination and related appeals, subject to the parties' providing status updates every six months. *See Procter & Gamble*, 2007 WL 2990152, at *2.[7]

Respectfully,

Richard L. Rainey
Covington & Burling LLP
Counsel for the Samsung Defendants

Vincent J. Belusko w/ express permission
Morrison & Foerster LLP
Counsel for the Mitsubishi Defendants

cc:   Counsel of Record (by Email, Federal Express, and Hand Service)

---

[6] The two Mitsubishi holding companies named as defendants in this lawsuit (Mitsubishi Electric US Holdings, Inc. and Mitsubishi Electric and Electronics USA, Inc.), and Samsung Electronics America, Inc., are not participating in the reexamination, but agree to be bound nonetheless.

[7] Genoa may argue that a decision on whether to enter a stay should be delayed until the PTO formally grants *inter partes* reexamination. *See* 35 U.S.C. § 312 (requiring the PTO to respond within three months). As noted, grant of the reexamination request is a practical certainty. Given that defendants have raised a substantial validity issue, there is no reason to continue with the expense of litigation when Congress has provided for the PTO to address validity. *See eSoft, Inc.*, 505 F. Supp. 2d at 786, 789-90 (entering a stay and directing the parties to "immediately advise the court of the PTO's decision to grant or deny Defendant's petition for reexamination").