# EXHIBIT B

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/000,347 | 02/19/2008 | 7113152 | 346720000013 | 3327 |

49443        7590        05/02/2008
Pearl Cohen Zedek Latzer, LLP
1500 Broadway
12th Floor
New York, NY 10036

| EXAMINER |
|---|
| MENEFEE, JAMES A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 05/02/2008 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

David L. Fehrman
Morrison & Foerster LLP
555 West Fifth Street, Suite 3500
Los Angeles, CA 90013

# Transmittal of Communication to Third Party Requester
## *Inter Partes* Reexamination

REEXAMINATION CONTROL NUMBER *95/000,347*.

PATENT NUMBER *7,113,152*.

TECHNOLOGY CENTER *3999*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above-identified reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it <u>cannot</u> be extended. See also 37 CFR 1.947.

If an *ex parte* reexamination has been merged with the *inter partes* reexamination, no responsive submission by any *ex parte* third party requester is permitted.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

PTOL-2070 (Rev.07-04)

| ORDER GRANTING/DENYING REQUEST FOR INTER PARTES REEXAMINATION | Control No. 95/000,347 | Patent Under Reexamination 7113152 |
|---|---|---|
| | Examiner James Menefee | Art Unit 3992 |

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --

The request for *inter partes* reexamination has been considered. Identification of the claims, the references relied on, and the rationale supporting the determination are attached.

Attachment(s):   ☐ PTO-892   ☒ PTO/SB/08   ☐ Other: _____

1. ☒ The request for *inter partes* reexamination is GRANTED.

　　☐ An Office action is attached with this order.

　　☒ An Office action will follow in due course.

2. ☐ The request for *inter partes* reexamination is DENIED.

This decision is not appealable. 35 U.S.C. 312(c). Requester may seek review of a denial by petition to the Director of the USPTO within ONE MONTH from the mailing date hereof. 37 CFR 1.927. EXTENSIONS OF TIME ONLY UNDER 37 CFR 1.183. In due course, a refund under 37 CFR 1.26(c) will be made to requester.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Order.

Application/Control Number: 95/000,347 Page 2
Art Unit: 3992

## ORDER GRANTING REEXAMINATION REQUEST

A substantial new question of patentability ("SNQ") affecting claims 1-10 of U.S. Patent No. 7,113,152 ("the '152 patent") is raised by the *inter partes* reexamination request filed 2/19/2008 ("Request"). Claims 1-10 will be reexamined.

An Office action on the merits does not accompany this order for *inter partes* reexamination, but will be provided in due course. Patent owner is reminded that no proposed amendment may be made until after the first Office action on the merits. 37 CFR 1.939(b).

### *References Cited in Request*

U.S. Patent No. 5,650,832 to Poradish et al. ("Poradish").

U.S. Patent No. 6,262,744 to Carrein ("Carrein").

U.S. Patent No. 6,567,134 to Morgan ("Morgan").

U.S. Patent No. 6,570,584 to Cok et al. ("Cok").

U.S. Patent No. 6,674,489 to Kagawa et al. ("Kagawa").

JP 6-261332 to Kanazawa et al. ("Kanazawa") (translation provided with Request).

Yamaguchi, Multiprimary Color Displays, Color Forum Japan '99 (1999) pp. 73-79 ("Yamaguchi") (translation provided with Request).

Ajito et al., Expanded Color Gamut Reproduced By Six-Primary Projection Display, Projection Displays 2000: Sixth in a Series, Proceedings of SPIE (Jan. 24-25, 2000) pp. 130-137 ("Ajito").

Application/Control Number: 95/000,347 Page 3
Art Unit: 3992

### *Extensions of Time*

Extensions of time under 37 CFR 1.136(a) will not be permitted in *inter partes* reexamination proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to the patent owner in a reexamination proceeding. Additionally, 35 U.S.C. 314(c) requires that *inter partes* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.937). Patent owner extensions of time in *inter partes* reexamination proceedings are provided for in 37 CFR 1.956. Extensions of time are not available for third party requester comments, because a comment period of 30 days from service of patent owner's response is set by statute. 35 U.S.C. 314(b)(3).

### *Notification of Other Proceedings*

The patent owner is reminded of the continuing responsibility under 37 CFR 1.985(a), to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the '152 patent throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP § 2686 and 2686.04. Note the examiner is aware of co-pending reexamination proceedings 95/000,348 and 95/001,031, as well as the ongoing litigation styled *Genoa Color Technologies, Ltd. v. Mitsubishi Electric Corp.*, 1:07cv6233 (S.D.N.Y. filed 7/5/2007); any decision on whether to merge the reexamination proceedings will be made after all the Requests have been considered. See generally MPEP 2686.01.

Application/Control Number: 95/000,347                                                                 Page 4
Art Unit: 3992

## Prosecution History

The '152 patent was filed as application number 10/297,672 as a national stage of PCT/IL01/00527. The PCT had a filing date of 6/7/2001 and claims priority to 09/710,895, filed 11/14/2000, and 60/209,771, filed 6/7/2000.

The '152 patent was filed with a preliminary amendment canceling the claims from the PCT and adding new claims 97-152. Another preliminary amendment canceled claims 128 and 141-152 and amended other claims. In a first action mailed 9/20/2005, the examiner rejected all claims as obvious over a combination of several references, and also rejected the claims under obviousness-type double patenting. An interview was held 12/14/2005 where the examiner agreed that the cited art "does not teach 'projecting polychromatic light from a light source onto a first side of a color wheel having at least four non-white and non-black color filters and rotating the color wheel such that the polychromatic light from the light source is sequentially filtered by transmission through the at least four color filters to sequentially produce at a second side of the color wheel, opposite the first side, light of at least four colors, each of the at least four colors having a different chromaticity from the others of the at least four colors.'" Interview Summary 12/14/2005. In a response filed 12/20/2005, patent owner canceled all claims and added new claims 153-162 including the above noted limitations. The examiner sent a final rejection on 3/17/2006, rejecting the new claims for double patenting and objecting to certain claims. Patent owner filed a terminal disclaimer and corrected the objected to material. The case was allowed with an examiner's amendment to add the data signal to current claim 1 and correct antecedent basis in current claim 5. No reasons for allowance were cited.

Application/Control Number: 95/000,347                                                                                           Page 5
Art Unit: 3992

     In light of the examiner's statement from the 12/14/2005 interview summary, and the fact that no prior art rejections were ever made after the claims were amended to include the agreed upon limitations, it appears that the claims were allowed due to prior art lacking the above quoted limitations, found in current claim 1. It is further noted that the '152 patent itself appears to distinguish the invention from the prior art for similar reasons, noting the use of a color wheel having four or more color filters provides a greater range of colors than systems utilizing only three colors. See col. 3 lines 5-20; col. 4 lines 8-21; Fig. 2 (showing three colors covers the triangle 20, while six colors covers the hexagon 22). Patents or printed publications teaching such features would therefore have been important to a reasonable examiner in determining the patentability of the claims.

Application/Control Number: 95/000,347　　　　　　　　　　　　　　　　　　　　　　Page 6
Art Unit: 3992

### *Priority*

The Request has challenged the priority claim of the '152 patent, arguing that the claims of the patent are entitled to an earliest effective filing date of 11/14/2000 (the filing date of the parent), as opposed to 6/7/2000 (the filing date of the provisional). See Request pp. 11-13. The priority claim was never considered during the original examination, and the reasoning in the Request is at least plausible, therefore the priority challenge is considered sufficient for determining the existence of SNQs. The examiner will make a determination as to the sufficiency of the priority claim in the first action on the merits.

Application/Control Number: 95/000,347                                                              Page 7
Art Unit: 3992

### *Proposed Rejections/SNQs*

The following rejections/SNQs are proposed in the Request. See Request pp. 2 (Table of Contents listing the proposals). Citations below are to the body of the Request where the proposals are detailed. See also the claim charts provided with the Request and matching the references to the claims.

A.  Claims 1-10 are anticipated by Kagawa. Request pp. 15-21.

B.  Claims 8-10 are obvious over Kagawa. Request p. 22.

C.  Claims 8-10 are obvious over Kagawa in view of any one of Yamaguchi, Carrein, Kanazawa, Cok, or Ajito. Request pp. 22-29.

D.  Claims 1-10 are anticipated by Poradish. Request pp. 29-32.

E.  Claims 8-10 are obvious over Poradish. Request p. 33.

F.  Claims 8-10 are obvious over Poradish in view of any one of Yamaguchi, Carrein, Kanazawa, Cok, or Ajito. Request pp. 33-34.

G.  Claims 1-10 are anticipated by Morgan. Request pp. 34-38.

H.  Claims 8-10 are unpatentable under 35 U.S.C. 135(b) in view of Morgan. Request pp. 39-40.

The examiner agrees that Issues A-G raise a SNQ; the examiner does not agree that Issue H raises a SNQ. Detailed explanations follow.

Application/Control Number: 95/000,347                                                                     Page 8
Art Unit: 3992

### *Discussion of the References Pertaining to the Alleged SNQs*

Proposals A-C:

It is agreed that Kagawa raises a SNQ as to claims 1-10 when considered alone (Proposals A-B), and raises a SNQ as to claims 8-10 when considered in combination with the above noted references (Proposal C).

Kagawa describes a device for displaying a color image. As shown in Fig. 1, Kagawa appears to show polychromatic light from a light source 1 is projected onto a first side of a color wheel 2 having at least four non-white and non-black color filters 31-36 and rotating the color wheel such that the polychromatic light from the light source is sequentially filtered by transmission through the at least four color filters to sequentially produce at a second side of the color wheel, opposite the first side, light of at least four colors, each of the at least four colors having a different chromaticity from the others of the at least four colors. Fig. 20 shows the emission of lamp 1 is polychromatic. Fig. 2 shows the transmission characteristics of filters 31-36, showing that transmitted light of the four colors will have different chromaticity. Col. 10 line 60 – col. 11 line 11 describes the color wheel as rotating so that light is separated into the different colors in a time-division manner, i.e. sequentially produced similarly as in the '152 patent. Comparing Figs. 23 and 26, one can see that the use of this six color wheel enables production of a greater range of colors than the previously used three color color wheel (shown in Fig. 15). Thus, Kagawa appears to disclose the very features that were deemed lacking in the prior art during the original prosecution.

Given the above teachings showing that Kagawa appears to disclose what was found lacking in the original prosecution, along with the item matching of Kagawa to the claims as

Application/Control Number: 95/000,347                                           Page 9
Art Unit: 3992

cited above, a reasonable examiner would have found Kagawa important in considering the patentability of claims 1-10 as in Proposal A. Similarly, given the Request's explanation as to why the subject matter of claims 8-10 would have been obvious over Kagawa alone, a reasonable examiner would have found Kagawa important in considering the patentability of these claims as in Proposal B.

Likewise, a reasonable examiner would have found Kagawa important in considering the patentability of claims 8-10 when combined with the other references as in the proposed combinations of Proposal C. While Kagawa appears to disclose the material found lacking during the original prosecution, these additional references are added for their alleged teachings of the limitations of dependent claims 8-10. As the Request explains how these additional references might disclose the limitations of these dependent claims, and provides reasoning as to why the references might be combined with Kagawa, a reasonable examiner would have found these combinations to be important in considering the patentability of the claims.

The teachings of Kagawa discussed herein, alone or in the above combinations, are not cumulative to any written discussion on the record of the teachings of the prior art, were not previously considered nor addressed during a prior examination, and the same question was not the subject of a final holding of invalidity in the Federal Courts.


Proposals D-F:

It is agreed that Poradish raises a SNQ as to claims 1-10 when considered alone (Proposals D-E), and raises a SNQ as to claims 8-10 when considered in combination with the above noted references (Proposal F).

Application/Control Number: 95/000,347  Page 10
Art Unit: 3992

Poradish describes a device for displaying a color image. As shown in Fig. 1, Poradish appears to show polychromatic light from a light source 16 is projected onto a first side of a color wheel 15 having at least four non-white and non-black color filters (the Figure shows three filters, but Poradish discloses more may be used, i.e. at least four, col. 4 lines 6-13) and rotating the color wheel via motor 15a and rotating shaft 15b such that the polychromatic light from the light source is sequentially filtered by transmission through the at least four color filters to sequentially produce at a second side of the color wheel, opposite the first side, light of at least four colors, each of the at least four colors having a different chromaticity from the others of the at least four colors. Light source 16 is necessarily polychromatic, as the filters of the color wheel will filter light at different colors, i.e. frequencies. As the filters filter out different color light, the transmitted light from the filters will have different chromaticity. The rotation of the wheel combined with the incident light beam yields a sequential filtering by the filters. See col. 1 lines 28-38. Thus, Poradish appears to disclose the very features that were deemed lacking in the prior art during the original prosecution.

Given the above teachings showing that Poradish appears to disclose what was found lacking in the original prosecution, along with the item matching of Poradish to the claims as cited above, a reasonable examiner would have found Poradish important in considering the patentability of claims 1-10 as in Proposal D. Similarly, given the Request's explanation as to why the subject matter of claims 8-10 would have been obvious over Poradish alone, a reasonable examiner would have found Poradish important in considering the patentability of these claims as in Proposal E.

Application/Control Number: 95/000,347  Page 11
Art Unit: 3992

Likewise, a reasonable examiner would have found Poradish important in considering the patentability of claims 8-10 when combined with the other references as in the proposed combinations of Proposal F. While Poradish appears to disclose the material found lacking during the original prosecution, these additional references are added for their alleged teachings of the limitations of dependent claims 8-10. As the Request explains how these additional references might disclose the limitations of these dependent claims, and provides reasoning as to why the references might be combined with Poradish, a reasonable examiner would have found these combinations to be important in considering the patentability of the claims.

The above SNQs based on Poradish alone, based on Poradish combined with Carrein, and based on Poradish combined with Ajito, are based solely on patents and/or printed publications already cited/considered in an earlier concluded examination of the patent being reexamined; all are old art cited during the previous examination. On November 2, 2002, Public Law 107-273 was enacted. Title III, Subtitle A, Section 13105, part (a) of the Act revised the reexamination statute by adding the following new last sentence to 35 U.S.C. 303(a) and 312(a): "The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office."

For any reexamination ordered on or after November 2, 2002, the effective date of the statutory revision, reliance on previously cited/considered art, i.e., "old art," does not necessarily preclude the existence of a substantial new question of patentability (SNQ) that is based exclusively on that old art. Rather, determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis. In the present instance,

there exists a SNQ based on Poradish, either alone or combined with other old art as noted above. A discussion of the specifics now follows:

Poradish was cited on an Information Disclosure Statement during the original prosecution of the '152 patent. The reference, however, was never discussed on the record by either patent owner or the examiner. Thus, it is not apparent to what extent the teachings of Poradish were considered or appreciated during the original prosecution. Given that the Request has shown that Poradish appears to teach what was found lacking during the original prosecution, that the Request has item matched Poradish to all of the limitations of the claims, and given the lack of discussion of Poradish on the record in the previous examination, Poradish is deemed to be presented in a new light, in a different way, as compared with its use in the previous examination in light of material new arguments presented in the Request. The use of Poradish in this proceeding is therefore not precluded by the reference being old art, and SNQs have been raised for the reasons discussed above.

Proposal G:

It is agreed that Morgan raises a SNQ as to claims 1-10.

Morgan describes a device for displaying a color image. Morgan appears to disclose polychromatic light from a light source is projected onto a first side of a color wheel having at least four non-white and non-black color filters (as seen in Fig. 7, col. 5 lines 1-3) and rotating the color wheel such that the polychromatic light from the light source is sequentially filtered by transmission through the at least four color filters to sequentially produce at a second side of the color wheel, opposite the first side, light of at least four colors, each of the at least four colors

Application/Control Number: 95/000,347 Page 13
Art Unit: 3992

having a different chromaticity from the others of the at least four colors. The light source is white light, therefore polychromatic, and the spinning of the wheel while the light source is incident yields a sequential production of the colors of the wheel. See col. 1 lines 43-57. In Fig. 8 one can see that the use of the six color wheel enables production of a greater range of colors than the previously used three color wheel. Thus, Morgan appears to disclose the very features that were deemed lacking in the prior art during the original prosecution.

Given the above teachings showing that Morgan appears to disclose what was found lacking in the original prosecution, along with the item matching of Morgan to the claims as cited above, a reasonable examiner would have found Morgan important in considering the patentability of claims 1-10 as in Proposal G. The teachings of Morgan discussed herein are not cumulative to any written discussion on the record of the teachings of the prior art, were not previously considered nor addressed during a prior examination, and the same question was not the subject of a final holding of invalidity in the Federal Courts.

Proposal H:

It is not agreed that Morgan raises a SNQ under 35 U.S.C. 135(b). The Request argues that 35 U.S.C. 135(b) may be applied for rejecting claims in *ex parte* proceedings. The Request further argues that 135(b) is analogous to double patenting in that it requires a comparison of the claims at issue to a patent claim, and double patenting is acceptable in reexaminations, therefore use of 135(b) should also be acceptable. The examiner does not agree that 35 U.S.C. 135(b) is applicable in reexaminations.

Application/Control Number: 95/000,347                                                    Page 14
Art Unit: 3992

First, it is noted that nowhere does the MPEP specify that section 135 may be an appropriate basis for reexamination. MPEP 2217 indicates several subsections of 35 U.S.C. 102 may form a basis for reexamination, as well as 35 U.S.C. 103 when based on references applicable under those subsections of section 102. Section 2217 also indicates double patenting may be considered. Nothing in MPEP Chapter 2200 mentions 35 U.S.C. 135 as a basis for reexamination.

The examiner aggress that 35 U.S.C. 135(b) may be used in *ex parte* rejections in applications. In re McGrew 43 USPQ2d 1632 (Fed. Cir. 1997). In *McGrew*, the Federal Circuit quoted with favor the Board of Patent Appeals and Interferences, which had stated that section 135(b) is "a statute of repose . . . to be a statute of limitations, so to speak, on interferences so that the patentee might be more secure in his property right." *Id.* at 1634. The purpose of the statute then is to prevent an interference from being declared over one year after a claim has been presented, thus allowing the first person who presented the claim to be secure that she will not be subject to an interference.

Interferences, however, will only be declared when the potentially interfering claims are in an application. 35 U.S.C. 135(a) ("Whenever <u>an application</u> is made for a patent which . . . would interfere with any pending application, or with any unexpired patent, an interference may be declared . . . .") (emphasis added). The statute does not provide for an interference to be declared during a reexamination proceeding.[1] Since an interference cannot be declared in a reexamination proceeding, then there is little reason to apply the statute of repose for interferences that exists in 35 U.S.C. 135(b).

Application/Control Number: 95/000,347                                                              Page 15
Art Unit: 3992

A further issue is that 35 U.S.C. 135(b) also applies only to an "application" by its terms; it does not apply to patents under reexamination. 35 U.S.C. 135(b)(1) ("A claim which is the same as, or for the same or substantially the same subject matter as, a claim of an issued patent may not be made <u>in any application</u> unless such a claim is made prior to one year from the date on which the patent was granted.") (emphasis added).[2] It is true that the claims at issue were first presented while the '152 patent was indeed an application; but since the claims are no longer in "an application" then the examiner does not have the statutory authority to reject the claims. The statute only allows on its face for rejecting claims in an application, therefore the examiner has no authority to make such a rejection during a reexamination. The examiner thus determines that 35 U.S.C. 135(b) cannot form the basis for reexamination, and the proposed SNQ of this issue is denied.

---

[1] An interference could of course be declared in some other application, between that application and the patent that is subject to reexamination; but what is at issue here is the potential for an interference to be declared in the reexamination.
[2] It is noted that the other statutory sections that apply in reexaminations, 35 U.S.C. sections 102 and 103 (and even 101 and 112 for newly presented claims), are not on their face limited to "applications" but are instead drawn to general requirements for patentability.

Application/Control Number: 95/000,347 Page 16
Art Unit: 3992

### NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination or an *inter partes* reexamination is designated as the correspondence address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), automatically changed to that of the patent file as of the effective date.**

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, including the present reexamination proceeding, and to any reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

```
Reexamination and Amendment Practice          (571) 272-7703
Central Reexam Unit (CRU)                     (571) 272-7705
Reexamination Facsimile Transmission No.      (571) 273-9900
```

Application/Control Number: 95/000,347                                           Page 17
Art Unit: 3992

## Conclusion

All correspondence relating to this *inter partes* reexamination proceeding should be directed:

By **U.S. Postal Service Mail** to:

    Mail Stop *Inter Partes* Reexam
    ATTN: Central Reexamination Unit
    Commissioner for Patents
    P.O. Box 1450
    Alexandria, VA 22313-1450


By FAX to:   (571) 273-9900
               Central Reexamination Unit


By hand to:  Customer Service Window
               Randolph Building
               401 Dulany St.
               Alexandria, VA 22314

Any inquiry concerning this communication or earlier communications from the Reexamination Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.


Signed:

*/James Menefee/*

James Menefee
Primary Examiner
Central Reexamination Unit 3992
(571) 272-1944

April 28, 2008

Conferees: */signatures/*

MARK J. REINHART
CRU SPE-AU 3992