# EXHIBIT A

**INSTITUTE for PROGRESS**

**Reexamining *Inter partes* Reexam**

Beginning in 1981, U.S. patent law set up patent reexamination as an administrative alternative to litigation for addressing patent validity concerns. The idea was to create a less expensive and speedier alternative to decide questions of patent validity. Although the level of scrutiny of the U.S. patent system has risen dramatically in light of the ongoing debate over patent reform, reexamination has received relatively little attention. Recently however, we have observed a number of trends that suggest that it might be time to carefully reexamine patent reexamination, particularly *inter partes* reexamination.

In doing so, we have discovered the following:
- *Inter partes* reexaminations requests are rising rapidly – a 6X increase between 2003 and 2007
- Reexamination, particularly *inter partes* reexamination is not simply used as an alternative to litigation, but an integral part of litigation strategy – more than half (52%) of patents in *inter partes* reexams are known to be in litigation during their reexamination
- Virtually all requests for *inter partes* reexamination are granted – 95% of *inter partes* reexam requests are granted, and this statistic may actually understate the effective grant rate
- To date, there has never been a single *inter partes* reexamination that has gone through the entire reexamination process (including appeal) and made it to completion – only three have ever received a decision by the Board of Patent Appeals and Interferences
- Despite a mandate for "special dispatch", the time required to complete an *inter partes* reexamination is much longer than commonly believed
    o Without appeal, the average pendency period for *inter partes* reexam is 43.5 months, much longer than the 28.5 months reported by the USPTO – a 95% confidence interval would put the pendency between 34 and 53 months
    o Although no *inter partes* reexam has ever been completed after being appealed, the average pendency for appealed *inter partes* reexams is 78.4 months (assuming no rework by the patent office or secondary appeal) - a 95% confidence interval would put the pendency between 5 and 8 years

**Why reexamine *inter partes* reexams?**
Over the last several years, the number of reexamination requests at the USPTO has been rising rapidly. This is particularly true for *inter partes* reexams. The number of requests for *inter partes* reexam had increased 6X from 24 in calendar 2003 to 142 in calendar 2007. (Note: Our analysis is based on calendar years rather than the USPTO's fiscal year.) This increase appears to be a result of the increasing use of reexamination as an integral part of litigation strategy by defendants or potential defendants in patent



litigation. According to USPTO statistics, more than half (52%) of all patents subject to *inter partes* reexamination are known to be in litigation during the reexamination process.

The story of Microsoft and Avistar is a particularly telling example. After six months of licensing negotiation, Microsoft has requested reexamination of 24 of Avistar's 29 U.S. patents. Although Avistar's key patents have previously survived two significant litigations, Microsoft's actions have delayed its licensing program and placed the company into financial distress resulting in a 25% reduction in its U.S. and European workforce.

Although the reexamination statute in the U.S. may have been intended to provide an alternative to litigation, the actual use of reexamination appears to be an augmentation of litigation strategy rather than an alternative. In many cases, patent litigation in U.S. courts and 337 actions at the International Trade Commission (investigations of unfair trade practices related to IP infringement) run simultaneously with reexamination at the Patent Office. Simultaneous litigation and reexamination raise serious questions for U.S. courts about whether to wait for the results of a pending reexamination or continue with their court proceedings.

The conclusions so far have been mixed. In some cases, patent litigation has been stayed pending the results of reexam, while in others, the cases have continued. Many people will remember for example that Judge Spencer who presided over the contentious patent battle between NTP and RIM over the "Blackberry patents" famously refused to stay the litigation proceedings despite the fact that the PTO had issued an initial rejection of the claims at issue.

These difficult and often critical decisions by circuit court judges and administrative law judges depend heavily on their understanding and expectations of what will happen in the reexamination process at the PTO. How reliable are initial office actions as a predictor of final results in a reexamination? How long will the process take? How often are the patent examiner's finding upheld on appeal? For judges, these questions are critical in determining whether a request for a stay should be granted. For litigants, these questions can strongly influence litigation strategy.

*Ex parte* reexamination was established by statute in 1981, and more than 9,000 reexamination requests have been filed with more than 6,000 reexamination certificates issued (signaling the completion of the process). The *ex parte* reexamination process is well established. Much less is known about *inter partes* reexams. Established by statute in November of 1999, the first *inter partes* reexamination was not requested until 2001. Through mid-April of 2008, there have been 396 requests for *inter partes* reexamination at the USPTO, and only 16 of those have received reexamination certificates.

INSTITUTE for PROGRESS

Given the rising importance of reexaminations in general, and the relative scarcity of information about *inter partes* reexam specifically, we decided to take a closer look to discover what can be learned about this relatively little understood process.

**What did we do?**
To examine the *inter partes* reexamination process, we copied transaction level data for every *inter partes* reexamination from the USPTO's PAIR database. These transactions reveal both the sequence and the timing of each step through the process. The database we created all cases and transactions through April 16, 2008.

We noted and corrected a number of anomalies in the PTO data including:
-   Several reexaminations appeared to proceed without the initial "Request for *Inter partes* Reexamination" transaction in the PTO data – we investigated and manually filled in this missing data
-   Several reexaminations included references to "*ex parte*" reexamination despite the fact that they were "*inter partes*" reexams – we manually reviewed and resolved each discrepancy
-   Duplicate transactions (same reexam number, same transaction, same date) were eliminated – these were generally not errors, but represent instances where the documents were uploaded into the PAIR system in multiple parts

We then extracted the key milestone transactions in the reexamination process and mapped the process and timeline for every *inter partes* reexamination to discover what path each case had taken through the process, and how long each step in the process takes. The results of our analysis are briefly described below, and more fully captured in the attached presentation slides.


**What did we find?**
Requests for *inter partes* reexamination are rising rapidly
As described above, the number of *inter partes* reexamination requests is rising rapidly. In 2007, there were 142 requests for *inter partes* reexams, three times as many as in 2005, and nearly six times as many as in 2003. *Inter partes* reexam requests have risen nearly 90% per year (CAGR) over the last five years.

Nearly all *inter partes* reexamination request are granted
Granting a request for reexamination is not automatic. The standard for granting a reexamination request requires that a "significant new question" of patentability must be presented by the requestor. Since their inception in 2001, there have been 396 requests for *inter partes* reexamination requested at the USPTO. Of these, 354 have reached a decision about whether the reexamination request will be granted. Over this period, ninety-five percent of all *inter partes* reexam requests have been granted. With so few requests being denied (19), we reviewed each case where a reexamination was denied, and found that the effective denial rate may actually be overstated. A number of the



nineteen requests for reexamination that were denied are from a small number of inventions where multiple patent reexams were requested. Still others were not for utility patents, but were request for reexamination of design patents. It is fair to say that virtually all requests for *inter partes* reexamination are granted. Whatever threshold has been established by the Patent Office for determining a "significant new question" of patentability, few requestors have been unable to clear it.

The *inter partes* reexamination process is not linear

By tracing every single *inter partes* reexamination through the process, we were able to discover the path through reexamination that is actually followed by real patents in process. While the majority of patents follow the main sequence (Request → Grant → Non-final Office Action → ACP → Reexam Certificate), some cases skip steps, and others repeat steps multiple times. For example, some reexams skip over multiple steps and proceed quickly to a Reexam Certificate. This happens most often when the patent holder fails to respond to the Patent Office within the statutory timeframe, and the PTO proceeds to issue a certificate. Still other times, patents repeat steps multiple times. About one-quarter of the time *inter partes* reexams include multiple "Non-final Office Actions", and about one-tenth of the time they receive multiple "Actions Closing Prosecution".

One-quarter of all *inter partes* reexam decisions are appealed, but none has ever proceeded through appeal to the end of the process

One of the major challenges in examining the *inter partes* reexam process is that very few cases have proceeded all the way through the process. Through mid-April 2008, only nineteen cases have ever proceeded past the Notice of Right to Appeal. Of these, approximately one-quarter (5 cases - 26%) have been appealed to the Board of Patent Appeals and Interferences (BPAI), one case (~5%) went back for another Action Closing Prosecution, and the remaining 13 cases (68%) moved on to "Intent to Issue a Reexam Certificate".

Of the cases that have gone on to appeal, only three have received a decision by the BPAI. None of the three decisions represents a final decision by the BPAI that can be appealed to the Federal Circuit as in each case, the Board added new grounds for rejection and remanded the cases to the Patent Office for further action. None of the three cases has reached a final Reexamination Certificate, and it has taken 4, 4, and 5 years for the cases to get to the initial BPAI decision.

The average pendency of 28.5 months reported by the USPTO is highly skewed

The USPTO regularly publishes statistics about *inter partes* reexaminations. According to their latest publication (December 31, 2007), the average pendency (Filing date to certificate issue date) is 28.5 months. This calculation is based on only 12 *inter partes* reexaminations that had reached a final certificate by that date. In our analysis which is up to date as of April 16, 2008, we found 16 reexaminations that had reached a final



certificate. Our calculation of average pendency for those cases was only slightly longer at 30.1 months.

However, in carefully examining the 16 cases that have received final certificates, we note that 10 of the completed reexams skipped directly from the "First Non-final Action" to the "Intent to Issue a Reexam Certificate". Upon closer inspection, each of these cases skipped multiple steps because the patent owner failed to respond to the office action. The average pendency of these cases was 24 months, while the average for the remaining six cases that followed the basic process (Non-final Action → ACP → Right of Appeal → Notice of Intent to Issue a Reexam Certificate → Reexam Certificate) was ~39 months. It should be noted that NONE of the cases that have received a final Reexam Certificate have gone to appeal.

While mathematically accurate, the pendency statistic provided by the USPTO is highly misleading. An appropriate reading of the statistic is that the Patent Office takes two years to dispose of a patent through *inter partes* reexam if the patent holder doesn't care to defend its rights. It takes significantly longer to get to a resolution if the patent holder participates in the process.

<u>Average pendency for an un-appealed *inter partes* reexam is more than 3.5 years</u>
Given the small number of cases that have proceeded through the *inter partes* reexam process, a more appropriate way to estimate average pendency is to calculate the time required for cases to proceed through each step in the process and sum them up. We calculated an average time and a 95% confidence interval for each step in the main sequence. Based on our calculations, it takes more than 3 ½ years (43.5 months) for the average case to proceed through the basic reexam process to a final conclusion – this assumes that the case is not appealed to the BPAI or beyond. A 95% confidence interval suggests a range of between 34 and 53 months for average pendency for an un-appealed *inter partes* reexam.

<u>Expected pendency for appealed *inter partes* reexams is at least 6.5 years</u>
*Inter partes* cases that go through the appeal process can be expected to take much longer than the 3 ½ years described above. Calculating average pendency for appealed cases is difficult because as we have noted, there has never been an appealed *inter partes* case that has completed the process. However, if we make a conservative assumption that all cases that go through the appeal process will receive a decision by the BPAI and immediately move to "Intent to Issue a Reexam Certificate", then we can calculate an average expected pendency. The result of this calculation is that average pendency (assuming no "rework" by the patent office and no secondary appeals to the BPAI, the Federal Circuit, or the Supreme Court) is 78.4 months – slightly longer than 6.5 years. A 95% confidence interval suggests an average pendency for appealed cases (again, assuming no rework) is between 5 and 8 years (60-97 months)! Given that the only three *inter partes* reexam cases that have received a BPAI decision all require further "rework" and are subject to further appeal, these estimates may be highly conservative.

INSTITUTE for PROGRESS

According to statute, reexam cases are to be handled with "special dispatch". This means that reexam cases are to receive priority over all other cases. The Patent Office has reportedly set a target of 24 months to complete the reexam process, but so far, the actual time to conclude an *inter partes* reexam is far beyond this target. This can not help but raise significant concern to anyone who is interested in the efficient administration of justice in the U.S. patent system.

**Conclusion**
The *inter partes* reexam process requires special attention by the U.S. Patent Office. At present, the time to complete these cases far exceeds the expectation of "special dispatch" embodied in the patent statute. Federal judges, administrative law judges, and litigants should take special note of these facts as they can significantly impact the progress of patent litigation.