# EXHIBIT C

86KUGENC.txt

1

86KUGENC
```
 1    UNITED STATES DISTRICT COURT
 1    SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------------x
 2    GENOA COLOR TECHNOLOGIES, LTD.,
 3
 3                   Plaintiff,
 4
 4            v.                              07 CV 6233(PKC)
 5
 5    SAMSUNG ELECTRONICS AMERICA, INC.,
 6    MITSUBISHI ELECTRIC CORP.,
 6    MITSUBISHI ELECTRIC US HOLDINGS,
 7    INC., MITSUBISH ELECTRIC AND
 7    ELECTRONICS USA, INC., MITSUBISHI
 8    DIGITAL ELECTRONICS AMERICA, INC.,
 8    SAMSUN ELECTRONICS CO. LTD.,
 9
 9                   Defendants.
10    ------------------------------------x
10                                          New York, N.Y.
11                                          June 20, 2008
11                                          10:00 a.m.
12    Before:
12
13                   HON. P. KEVIN CASTEL
13
14                                          District Judge
14
15                      APPEARANCES
15
16    PEARL COHEN ZEDEK & LATZER, LLP
16           Attorneys for Plaintiff
17    BY:  LEE A. GOLDBERG
17
18    LAHIVE & COCKFIELD, LLP
18           Attorneys for Plaintiff
19    BY:  SIBLEY P. REPPERT
19
20    MORRISON & FOERSTER LLP
20           Attorneys for Mitsubishi Defendants
21    BY:  VINCENT J. BELUSKO
21           ADAM LAVIER
22
22    COVINGTON & BURLING
23           Attorneys for Samsung Defendants
23    BY:  RICHARD RAINEY
24           BRIAN BIELUCH
25
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

2

86KUGENC
```
 1           (Case called)
 2           THE COURT:  I have been traveling in related fields of
 3    late.  I will just state for the record that I have an ongoing
 4    jury trial in the arena of a high pressure mercury vapor
 5    discharge lamp which, looking at the papers here, I suspect
 6    could be used as a light source in the patent at issue.  I just
 7    say that so that you know it has been on my mind of late and
 8    indeed, that trial, the testimony in that case has been
 9    concluded, and we will have closing arguments and jury
```
Page 1

86KUGENC.txt
```
10    instructions on Tuesday next.
11            So let me go through, for the record, with what I have
12    received and then you can tell me what if anything I am
13    missing.
14            I have the defendants' joint claim construction brief.
15            I have the declaration of James Shanley in support of
16    defendants' joint claim construction brief.
17            I have the tutorial DVD submitted by defendants which
18    I have reviewed.
19            I have the Samsung defendants' claim construction
20    surreply brief.
21            I have a supplemental declaration of Brian Bieluch, a
22    supplemental declaration of James F. Shanley.
23            I have from the plaintiff, plaintiff's claim
24    construction brief, the declaration of Louis D. Silverstein, a
25    reply claim construction brief from the plaintiff.
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3

86KUGENC
```
 1            And this morning I received a stand alone copy of the
 2    patent in issue, a stand alone copy of Genoa's proposed claim
 3    construction.
 4            I don't know that I have an updated joint claim
 5    construction chart.
 6            And I have what appears to be slides or materials from
 7    a PowerPoint that the plaintiff proposes to use.
 8            And I left out the declaration of Brian Bieluch in
 9    support of defendants' joint claim construction.
10            What have I omitted from the recitation?
11            MR. REPPERT:  There is a supplemental declaration of
12    Dr. Silverstein.  We have an extra copy.
13            THE COURT:  Bear with me for one second.
14            You know why I didn't mention it, my copy of it is
15    stapled to the reply claim construction brief.  I have it.
16            MR. REPPERT:  That's everything.
17            THE COURT:  Same question for the defendants.
18            MR. BELUSKO:  I believe that's everything.
19            MR. RAINEY:  I think that's right, your Honor.
20            THE COURT:  Let me hear from Mr. Reppert and then hear
21    from the defendants as to what you propose to do today.
22            MR. REPPERT:  What I propose to do is to provide a
23    presentation -- we did it yesterday, it is about an hour and 15
24    minutes.  I will start out myself and then bring up
25    Mr. Silverstein.  And we will certainly talk it through
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

86KUGENC
```
 1    together to try to educate you.  And it will cover,
 2    essentially, what we believe the background of the technology
 3    is, what they were intending, the problem they were addressing,
 4    how they addressed it, what they invented and then how that
 5    informs the claim construction issue.  We will argue
 6    specifically to support the construction that we urge the Court
 7    to adopt.
 8            THE COURT:  What do the defendants propose to do?
 9            MR. BELUSKO:  Your Honor, we are going to split our
10    presentation, but in terms of that presentation, if
11    Dr. Silverstein is going to be sworn and testify, then there
12    may be some brief cross that we may want to do of him.  But in
13    terms of our presentation, it will be primarily a PowerPoint
14    presentation with argument of counsel, both Mr. Rainey and
```
Page 2

86KUGENC.txt
15  myself.
16          THE COURT:  Let me get something out on the table in
17  this case.  I had a fair amount of letter briefing by the
18  parties trumpeting the fact that the defendants had sought
19  inter partes re-examination before the U.S. PTO, and the
20  defendants asked for a stay in that regard.
21          And I heard the parties fully on that, and I denied
22  that application.  And I denied that application, in my view,
23  for very good reason, the fact that a party is seeking inter
24  partes re-examination and expresses great optimism and cites to
25  me all sorts of statistical odds that the U.S. PTO will look
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                                5
    86KUGENC
1  favorably on things, I did not find terribly impressive as
2  weighed against what was already and what is already a pending
3  patent infringement action with a discovery date not out in the
4  vast distant future.
5          So I comfortably denied the stay after looking at the
6  factors cited to me by the parties, most notably, those cited
7  by the district court in eSoft, indicating that this was an
8  issue I would revisit and specifically noting the juncture of
9  the close of discovery as a good juncture to reconsider the
10  issue, what harm could arise from allowing discovery to go
11  forward in the interim.
12          Now I have the May 2, 2008 order granting inter partes
13  re-examination.  The fact that there is an order granting inter
14  partes re-examination, I guess I knew that when I saw you in
15  early May -- I certainly had not read a copy.  Whether I
16  physically had it somewhere in a file a copy or not or whether
17  it was handed to me at the conference, I don't know.  But I
18  think that the conference was in early May, and this is dated
19  May 2.  I think that we were together May 9, is that accurate?
20          MR. BELUSKO:  That is my recollection, your Honor.
21          THE COURT:  In any event, the fact of re-examination
22  was granted, simply, a statement that defendants' estimations
23  of the odds of re-examination being granted proved to be
24  correct.  And so even knowing the fact that an order had been
25  entered did not immediately strike me as altering the mix.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                                6
    86KUGENC
1          But now I have had a chance to examine the order and,
2  specifically, I now see that with regard to seven items of
3  prior art, the patent examiner -- and I guess he has two
4  conferrees, and I don't quite know that I exactly know what
5  that means -- has described with particularity in the order why
6  and how there is a question in the examiner's mind as to
7  whether seven of eight prior art references render the patent
8  either anticipated or obvious.
9          And while I don't know that I can say this as to every
10  case, I see, for example, with regard to the Kagawa
11  reference -- actually, I may have misdescribed it.  In the case
12  of Kagawa, there is an anticipation as to claims 1 through 10.
13  There is an obvious argument as to eight claims.  And, really,
14  we are talking about, I guess, four items of prior art but in
15  the case of Kagawa, it was not previously considered or
16  addressed during the prior examination.  That appears also to
17  be true with regard to Poradish.
18          Now, I don't know whether it is true as to the other
19  references or not.  Are they true as to the other references?
                            Page 3

86KUGENC.txt
20    Were they cited to the patent examiner?
21         MR. REPPERT:  If I could respond?
22         THE COURT:  Let me just finish.
23         The point I am making is that, having reviewed the
24    work of the patent examiner, there is now a question in my mind
25    as to whether the occasion of the May order is a reason why I
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
                                                              7

      86KUGENC
1     should now consider a stay.
2          Now, considering a stay doesn't mean that I can't hear
3     arguments on claim construction.  It doesn't mean I shouldn't
4     rule on claim construction.  I don't know.  Maybe I should rule
5     on claim construction.  Maybe I should just hear the parties
6     today but not rule on claim construction lest we have two
7     captains sailing the ship at the same time, but I lay this out
8     on the table.
9          Mr. Reppert.
10         MR. REPPERT:  All they have done is gotten through the
11    gate.  Nothing else has changed.  It was no big surprise that
12    they got through the gate.  It would have been surprising if
13    they didn't get through the gate considering how they
14    presented -- the rather skewed way they did present the
15    evidence that they presented to the Patent Office in requesting
16    the examination.  We are confident that when this issue finally
17    gets addressed, and it has not been addressed other than in a
18    superficial fashion, an initial look-see by the Patent
19    Office --
20         THE COURT:  Let me just slow you down a little bit on
21    that.
22         There are different standards that apply and that goes
23    for judges and Patent Offices and others.  If someone comes in
24    and simply makes the right allegations, a complaint often will
25    withstand a 12(b)(6) motion.  The court accepts the allegations
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
                                                              8

      86KUGENC
1     as true.  You have alleged the elements of a cause of action
2     for negligence, come on in, the water is fine, you have a cause
3     of action for negligence.
4          Quite frankly, due to my own inexperience, I thought
5     that might have been what a patent examiner did with a
6     re-examination application.  Was a fee paid?  Was the right
7     boxes checked?  Have you asserted the right allegations?  You
8     have?  Come on in.  Your re-examination proceeding is pending.
9          But I am reading this quite differently than that,
10    that there is a patent examiner who has looked at this and is
11    saying that there is a new question which he has concluded is
12    substantial.  Now, we can debate what "substantial" means, but
13    it is a merits look, no?
14         MR. REPPERT:  Procedurally, the Patent Office has not
15    issued an office action to which a response is appropriate from
16    us at this point.  This is a first stage.  They basically made
17    a first look-see.  They are getting through the gate.  This is
18    my initial view as to why they are getting through the gate.
19    And they have not addressed in any way, really, the merits in
20    any detail.  They have not really seen our position on these.
21         We have already provided to the Court an initial
22    declaration from Dr. Silverstein related to the invalidity
23    issues.  And that was filed back in like February or March.
24    And we addressed in there the Kagawa reference, the Poradish
                            Page 4

86KUGENC.txt
25    reference -- all of the other ones.
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
                                                          9
        86KUGENC
1                    And I can actually explain right now, if you want me
2        to get into it, why Kagawa is not an anticipatory reference.
3        It is actually a declaration by Dr. Silverstein, and I am glad
4        to put him on the stand and do a validity analysis right now, a
5        preliminary showing that we are actually going to prevail.
6                    THE COURT:  So should I find the patent valid and
7        trump the Patent Office on this one?
8                    MR. REPPERT:  Yes.
9                    THE COURT:  This morning, in fact?
10                   MR. REPPERT:  There is a procedure to be followed in
11       the examination.  And it may be that eventually we are all
12       aiming for the same Court of Appeals here down the road if
13       something doesn't happen here or whatever else, but for the
14       same reasons we discussed before, there are a lot of
15       considerations relating to the nature of the parties and their
16       situations and the advanced status of the case why it doesn't
17       make sense to stop the train at this point.
18                   The amount of delay that will occur if we have to put
19       everything on hold is very substantial and that is going to
20       have an extremely deleterious effect on my client.  And,
21       actually, the president of Genoa is here today and he can
22       explain it to you in person.  So that argument remains the
23       same.  Nothing has been decided that means anything yet by the
24       Patent Office.  What you see in front of you is not in way a
25       determination that the patent is invalid.
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
                                                          10
        86KUGENC
1                    THE COURT:  It is certainly not that.
2                    MR. REPPERT:  It is way early in the process.  It
3        takes a long time to go through this.  There are office actions
4        and responses.  These Patent Office procedures are like a very
5        slow dance and they take forever.
6                    THE COURT:  Let's just break this down.
7                    I am going to give you all the time you want, so
8        please humor me on my interruptions.  At the end, I will ask
9        you if there is anything else you want to say.  But let me ask
10       you at this point to address what happens next.  So there's an
11       order.  When do you make your submissions?
12                   MR. REPPERT:  After they provide their first office
13       action.  We don't know when that would be.  That could be six
14       months from now or more.  They were provided an office action,
15       the standard way this dialog happens at the Patent Office is
16       that we respond.
17                   THE COURT:  This proceeding was commenced or
18       originally filed in February '08?
19                   MR. REPPERT:  Right.
20                   THE COURT:  I must say, everybody in this case, as far
21       as I am concerned, has acted with the utmost of good faith.  I
22       have taken everything everybody has said at face value and none
23       of us, when we take our crystal balls, know what is going to
24       happen next.  That just goes without saying.  So any counsel in
25       this case making a prediction, I don't hold them to the
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
                                                          11
        86KUGENC
                         Page 5

86KUGENC.txt
1  contours of the prediction.  But I certainly recall -- correct
2  me if I am wrong -- that when we got together in March and I
3  denied the stay application, I was then under the impression
4  that it was going to take months, forever, before we were ever
5  going to hear anything from the Patent Office.  And, quite
6  frankly, I don't know what the right word is, I guess the word
7  is, I was somewhat impressed at this detailed order analyzing
8  the prior art, not with great precision but at least concluding
9  a substantial question being in issue so soon.
10            Did that surprise you?
11            MR. REPPERT:  No.  They have to decide whether to
12  accept re-examination.
13            THE COURT:  By when?
14            MR. REPPERT:  On their own good schedule.
15            This is just the first step of saying, you can get in
16  the door.  Now you go through the process.  It doesn't really
17  mean anything beyond that.
18            THE COURT:  Were they required to act so quickly on
19  the order which they issued?  Were they under a time
20  constraint?
21            MR. REPPERT:  Not that I know of.  I am actually a
22  litigator -- my understanding is no.
23            The next step, the actual argument in front of the
24  Patent Office is an extended process that starts with them
25  coming up with an office action and our responding to it, and
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

♀                                                              12

86KUGENC
1  that's where we present our argument, and that is a way down
2  the road.
3            THE COURT:   What is the meaning of the order they have
4  entered?
5            MR. REPPERT:  It just means that they granted
6  re-examination.  That's it.  It has no other effect.
7            THE COURT:   What kind of office action do you
8  anticipate?
9            MR. REPPERT:  The examiner will review this art and
10  then decide whether the examiner believes that whether the
11  patent -- he is going to make a decision whether, in light of
12  that art, the patent should have been granted or not.  And he
13  is going to make some statements about various claims probably.
14            And then at that point -- these office actions are --
15  this is what happens in the patent, and then you respond and
16  you go back and forth.  And it take as long time for this to
17  happen.  Every patent application goes through this process of
18  getting office actions and responding to them.  And it is quite
19  a long and slow dance.  That's how the system works.  It takes
20  years to get through this process.
21            In the meantime, we will have an opportunity to
22  explain our positions which we have not yet been able to do.
23  At this point it is like a grand jury situation.  They have
24  made a pitch.  The Patent Office said OK, it looks reasonable
25  to us.  We should reopen the file.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

♀                                                              13

86KUGENC
1            That's where we are now.  It doesn't say that they
2  have made any decisions.  They have determined that their
3  position is not frivolous, that there is a substantial issue
4  raised by this art.
5            We don't think that they understand the invalidity
                              Page 6

86KUGENC.txt
```
 6  case very well, basically, and I would be glad to explain to
 7  you why in fact Kagawa is not anticipatory.
 8          THE COURT:  I understand the argument.  I do
 9  understand we all have to approach all of this with humility.
10  And it may be that they don't understand the prior art
11  references.  I get that.  That is why there are multi-tiers in
12  this process.  That's why we have patent jury trials at times.
13  That is why courts decide issues of invalidity and the
14  decisions get reviewed on appeal.  Certainly at this stage of
15  the game, we don't have any finding on the validity of any
16  claim.  No question about that.
17          But I go back to what I said about 12(b)(6) motions,
18  that a denial of a 12(b)(6) motion, I guess, it is not an
19  implausible claim.  It states a claim upon which relief may be
20  granted, but it is certainly not an examination of whether or
21  not there is heft or merit to the facts that support the claim.
22  But here -- is it a three-examiner panel that looked at this?
23          MR. REPPERT:  Initially.  Procedurally, it is the same
24  situation.  There is no notion to dismiss, but there --
25          THE COURT:  Is the better analogy a preliminary
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

86KUGENC
```
 1  injunction motion?
 2          MR. REPPERT:  Could be in the sense that you say -- I
 3  don't think that they are making a determination of the
 4  likelihood of success, maybe somewhere between.  It is more
 5  than just a casual look-see to see whether you have a human
 6  being in front of you, stand up and walk.  It is an easy test
 7  on 12(b)(6), but it is not the same thing as evaluating in
 8  great detail who is going to win.  And they haven't heard our
 9  arguments and at least in the preliminary injunction you have
10  the parties arguing the case and presenting the evidence, and
11  here you don't have it.
12          THE COURT:  I think that you are right, Mr. Reppert.
13  I don't think that it is anything that strong.
14          MR. REPPERT:  So we have an initial salvo from them
15  that convinced the bureaucrats to say, OK, we will take another
16  look at it.  There is enough of an issue raised by this prior
17  art, that we should take a look at it.  That is their statutory
18  requirement.  That's all it is.  Now the games are going to
19  start.  What they say doesn't have any weight on anything down
20  the road.  The examiner has to go through the process of what
21  to do in the way of an office action, by the way of response
22  and then we are on the road.  Nothing has changed in terms of
23  the equities of the situation as to why this case should go
24  forward.
25          In terms of merits, we would be glad to make, if you
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

86KUGENC
```
 1  were interested, a preliminary showing of why the patent is
 2  valid.  I would be happy to do that right now.  I would be
 3  happy to do that.
 4          THE COURT:  A question I have for you is:  Is one of
 5  the outcomes of this process a narrowing of a claim?  In other
 6  words, do you walk away with a patent but you walk away with a
 7  patent with claims that look a little different?
 8          MR. REPPERT:  That sometimes happens in re-examination
 9  proceedings, but it doesn't always happen that way.  It could
10  happen.  That's what happens in the process of dialogue in some
```
Page 7

86KUGENC.txt
11  cases with the Patent Office.  They say, you have to resubmit
12  it on this form and it is OK, or something like that.
13           That could happen, but it may well not happen.  We may
14  stick to our guns and say these claims, as they exist now, are
15  not invalid of the prior art, and we could convince them that's
16  right.  It happens sometimes that way.  That is certainly going
17  to be our argument.
18           There is a first try and a second try and we go on and
19  on, and maybe some compromises somewhere or other down the
20  road.  I cannot tell you that at this point.  It is too
21  hypothetical.  That process does occur sometimes in this dialog
22  with the Patent Office, but I wouldn't be able to say offhand
23  that that would occur now in this case.
24           THE COURT:  All right.  This is helpful.
25           Anything else before I let the defendants speak to
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                              16
86KUGENC
1   this issue?  I will give you a chance to reply.
2           MR. REPPERT:  With the same degree of concern, that we
3   addressed this before.  This would be a very bad situation for
4   Genoa if you were to decide to stay the case at this time.  It
5   would have very serious effects on the company.  The case is
6   well along.  It is better to go forward for those reasons, and
7   we are confident that down the road we are going to win on the
8   issue and we can make that showing anytime you want.
9           THE COURT:  Thank you.
10          Let me hear from the defendants.
11          MR. BELUSKO:  With respect to Mitsubishi, your Honor,
12  I think that the particular grant of re-exam you read was in
13  connection with the re-exam that was the request that was filed
14  by Mitsubishi.
15          As your Honor is aware, when these go to the Patent
16  Office, there is actually a very special group of examiners
17  that receive re-examination requests.  I think there are 18
18  total in that group.  When they go to that group, because they
19  take this process very seriously, three examiners are assigned
20  to a particular matter.  You have the one that is the principal
21  person involved.  Then there are two people that he caucuses
22  with and confirms that what he or she says is appropriate in
23  any document that goes out.  It does not go out with just one
24  person looking at it.
25          The initial request is reviewed at a fairly
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                              17
86KUGENC
1   substantive level.  There is a review of the art provided.  And
2   then there is this grant or denial of that request that
3   outlines why, by looking at the claims in issue, the PTO
4   believes there is a substantial new issue of patentability.
5           In the case of the Mitsubishi re-examine request
6   before us, there were in fact seven prior art references raised
7   and there were seven total independent grounds that did various
8   combinations or standing alone of these various references.
9           Very importantly, we believe, in connection with this
10  is the point that you already raised, that some of these
11  references including Kagawa, which is a Mitsubishi patent, it
12  is our own patent, was referenced specifically as, and I quote
13  from this grant:  "Genoa appears to disclose the very features
14  that were deemed lacking in the prior art during the original
15  prosecution."  The very reason they were able to get the claim
                                Page 8

86KUGENC.txt
16    before was based on something more than a three-color wheel
17    color wheel and, of course, Kagawa showed six.
18             We think that this is a very strong re-exam request,
19    the PTO at this point has agreed, and we fully anticipate that
20    what happens after a grant like this, the first office action
21    is going to, in great part, mirror what you have seen in this
22    document where it has been granted, the request, and is going
23    to reject all of these claims.  And the process is going to go
24    forward.  And there are going to be opportunities, of course,
25    for Genoa to respond to that.  Because it is inter partes,
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300
                                                                    18

86KUGENC
1     there will be opportunities for us to continue this dialog with
2     PTO.
3              Your Honor, I want to make sure you are aware, in
4     Mr. Brian Bieluch's declaration that was attached in support of
5     our combined defendants' joint claim construction brief here,
6     he attached as Exhibits B and D, two other grants of re-exam
7     requests by the PTO.  What you are looking at is the one that
8     came about from Mitsubishi's request.  Samsung filed their own,
9     and that has been granted as well.
10             And Texas Instruments, the true inventor of DOP
11    technology, filed theirs which I will tell you is a tome, and I
12    believe has something like 80 references in it.  So there are
13    many more references than the seven that we are talking about
14    here that are now in issue.
15             THE COURT:  I need to be able to understand things
16    here.
17             MR. BELUSKO:  Sure.
18             THE COURT:  Are you referring to requests for
19    re-examination or are you referring to orders granting
20    re-examination?
21             MR. BELUSKO:  Orders granting re-examination.  The two
22    additional are Exhibits B and C -- I'm sorry -- C and D, your
23    Honor.
24             THE COURT:  What is B?
25             MR. BELUSKO:  B is Mitsubishi, which you already have.
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300
                                                                    19

86KUGENC
1              THE COURT:  Now I have it.
2              MR. BELUSKO:  C is Samsung.  And D is Texas
3     Instruments.
4              And I did misspeak.  In the case of Mitsubishi, we
5     have three independent grounds if you look at TI, Samsung and
6     Mitsubishi -- all three of them -- they are the seven grounds
7     that I spoke about, but many more references than the seven
8     that were raised in the Mitsubishi.
9              So what we have here is a lot of activity in the PTO
10    and what likely will happen, but we don't know yet, but what
11    will likely happen is that the PTO will consolidate those three
12    re-exams that are going on.  They are all inter partes re-exams
13    into a single matter.  There will be separate, I believe,
14    office actions, but then everything is going to be going
15    forward.  And this procedure is going to go forward.
16             Now, what can happen there?
17             We can't tell you what is going to happen.  These are
18    possibilities.  One is that the claims are cancelled,
19    obviously.  The other is that the claims go through cleanly.
20    The other is that the claims are amended.  But whatever happens
Page 9

86KUGENC.txt
21  among those three, there is going to be a substantial volume of
22  back and forth in the Patent Office, including statements by
23  Genoa, that are going to now build on the prosecution history
24  that should be considered before there is any claim
25  construction here.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                                20
86KUGENC
1           So however those claims come out, there is going to be
2  more information than we have today with respect to prosecution
3  history.  Obviously, if the claims are rejected, not allowed,
4  then that is going to obviate anything that needs to be done.
5           With respect to amendments, then we are dealing with
6  different animals that we are dealing with today.  Moreover as
7  your Honor is aware, there are certain intervening rights that
8  come into play if in fact the claims are amended.
9           I want to make sure that the Court appreciates that,
10  has to claim construction itself, it will be impacted by these
11  proceedings.  It might require that if we went forward today
12  that he these proceedings be redone in view of new statements,
13  new admissions that may come about in connection with pursuing
14  the re-exams that Genoa is going to have to be engaged in.
15          Mr. Rainey, is there anything else?
16          MR. RAINEY:  Your Honor, I just wanted to point out, I
17  am also, in addition to a litigator, I am also in registered
18  practice before the PTO.  I have handled some re-examinations.
19  I have not handled this one, but they moved by rule in the
20  Patent and Trademark Office, which means that re-examinations
21  move with what they call special dispatch.
22          THE COURT:  I think I read that somewhere in there,
23  they referring to that requirement.
24          MR. RAINEY:  Parties cannot obtain automatic
25  extensions of time which are common in normal patent
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                                21
86KUGENC
1  prosecutions.  So this process is going to move and it is going
2  to move fairly fast.  And we expect that we will see an office
3  action ask along the lines of what Mr. Belusko just mentioned,
4  rejecting all of these claims sometime this summer --
5  July-August time frame.  It is not going to take six more
6  months for that to happen.
7           We fully concur with Mitsubishi's position that go
8  forward on claim construction to try to shoot at a moving
9  target is simply an exercise that we shouldn't engage in at
10  this point in time.
11          I would add, your Honor, that a lot is left to do in
12  this case and we have not had -- in terms of depositions and
13  discovery, there has been no fact discovery in this case.  We
14  have had two depositions from each side, solely limited to the
15  issue of claim instruction.  There is a ton left to do in this
16  case.
17          THE COURT:  Let me ask you this.  Is a way for this
18  Court to go -- I don't know.  I put it out on the table.  It is
19  on the record.  That is why we are here, among other reasons.
20          Is there a way to go for me to not rule on claim
21  construction, putting aside whether or not I hear the remainder
22  of the balance of the evidence on claim construction, but not
23  rule on claim construction but allow the parties to go forward
24  with discovery in this case?
25          And so you have your proceeding before the U.S. PTO.
                        Page 10

86KUGENC.txt
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

22

86KUGENC

1   You conduct discovery.  You bring discovery in to conclusion.
2   It may be that as a result of developments in the Patent Office
3   that when, as and if the Patent Office is fully done with its
4   work, there might be tagalong discovery, additional discovery,
5   reopening of discovery that could be needed.  But have the bulk
6   of it done in this court and it is done.
7          And whether or not it is usable also in the PTO is not
8   an issue of interest to me, but it is certainly not a basis to
9   claim any prejudice that it might also be usable only in the
10  PTO.
11         Talk to me about that.
12         MR. RAINEY:  I think certainly, your Honor, we would
13  suggest that ruling on claim construction right now would not
14  be a wise move.  I think we are very confident that this patent
15  is going to change very dramatically.
16         As to the issue of discovery, I think from Samsung's
17  perspective -- Samsung's view is that this patent should never
18  have issued in the first place, certainly not in the form that
19  it exists today.  We have been in this lawsuit.  We don't think
20  we should be in this lawsuit.  And it is expensive for the
21  company to have to defend this lawsuit.
22         Now, I am not suggesting that Samsung is a small
23  company, but still I don't think it is appropriate in terms of
24  looking at what to do to say, we will just put you to the
25  expense of having to go through this.  At the end of the day,
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

23

86KUGENC

1   we may have concluded that this thing should never have
2   happened in the first place.
3          I would submit, perhaps what we do is stop this case
4   and allow the parties to periodically brief the Court every
5   three months, every six months as to the progress of the
6   re-examination.  And if the situation looks different than it
7   looks today, perhaps we can revisit the issue at that time.
8   But I think, to put Samsung and Mitsubishi to the expense of
9   having to defend this case, produce documents, make witnesses
10  available for depositions from Korea and Japan, have us go
11  elsewhere to take these depositions -- it is expensive for the
12  lawsuit that Samsung feels never should have been brought.
13         THE COURT:  Mr. Reppert.
14         MR. REPPERT:  Thank you, your Honor.
15         First of all, as a practical matter, Genoa is not
16  going to agree to amend these claims, for the reasons referred
17  to.  They are either going to fly or die, the way they are now
18  written.  The claims are not going to be revised in the --
19         THE COURT:  Let me just pause on that.  Why is that
20  so?  Does it require the subsequent of the patent owner?  Can
21  they not say that a claim is allowed, but narrowed?
22         MR. REPPERT:  They could do that, but it would not be
23  in Genoa's interest to do that.
24         THE COURT:  No.  I get that it would not be in Genoa's
25  interest to do that.
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

24

86KUGENC

1          MR. REPPERT:  In some circumstances, you can have
Page 11

86KUGENC.txt
2  claims revised in the process of the discussion at the Patent
3  Office.  That's true.
4          THE COURT:  They could issue a revision to the claim
5  and you could preserve your appellate rights and renounce
6  whatever they grant you --
7          MR. REPPERT:  We are the ones proposing an amendment
8  and they would say OK.  That's basically what would happen.
9  They could say no and we could say, how about this?  And they
10 say no, and we say, how about this?  And they say OK.  That's
11 pretty much how it goes.  There can be examiner's amendments
12 sometimes, but that is basically the process.
13         But in this situation, Genoa is not going to agree to
14 redactions -- the claim language is going to stay the same, or
15 there is going to be some determination somewhere down the road
16 by the PTO and the federal circuit that it is invalid.  Those
17 are really the choices that we were talking about here.
18         From a practical point of view -- from the point of
19 view of when claim construction should occur, we have to have
20 claim construction in order to do expert depositions, expert
21 discovery because you have to be able to ask them their opinion
22 with respect to something that the patent is about.  So that
23 happens in the fall of each.  So fact discovery, how this
24 machine works can go forward without a claim instruction, but
25 there is no real reason not to get it done now.  It has already
             SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300
                                                              25
   ♀
   86KUGENC
1  been briefed.  It doesn't take very long.  We think that the
2  construction is clear.
3          THE COURT:  Everybody thinks it is clear.
4          MR. REPPERT:  One thing I might be glad to do is amend
5  my presentation to ask Dr. Silverstein -- it actually fits
6  right into our presentation, and that may give you an idea of
7  why we are not in left field in terms of our validity position.
8  I will be glad to add that to my presentation.  He is fully
9  capable and prepared to explain why that particular reference
10 doesn't cover this invention.
11         THE COURT:  I think at this juncture, Mr. Reppert, I
12 am going to give you some latitude to do what you want to do by
13 the way of presentation or evidence to persuade me that a stay
14 ought not issue.  So let me give you that latitude.
15         MR. REPPERT:  I will take that offer and proceed on
16 that basis.
17         THE COURT:  Just one second.
18         MR. BELUSKO:  Your Honor, in terms of Dr. Silverstein
19 coming on and talking on validity, I have to object because Mr.
20 Reppert made a big deal about when we took his deposition, it
21 was to be limited to claim construction and we were not to go
22 off on to his prior statement by Dr. Silverstein on validity
23 that they submitted in connection with our original re-exam
24 request.  So we constrained ourselves in terms of that
25 deposition.  I think that it is, frankly, inappropriate to now
             SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300
                                                              26
   ♀
   86KUGENC
1  let him jump up here and testify on something that we were
2  constrained from doing any cross-examination during his depo.
3          THE COURT:  Go ahead, sir.
4          MR. RAINEY:  Moreover, a one-sided presentation on the
5  invalidity of the patent is putting us at a real disadvantage.
6  We obviously would have an expert that would counter strongly,
                          Page 12

86KUGENC.txt
```
 7   I am certain, everything Dr. Silverstein would say here.
 8           I would add, moreover, that the re-examination
 9   decision, the Mitsubishi re-examination decision rejects the
10   very basis I am sure Dr. Silverstein is going to rely on when
11   he deals with the issue of what a color image is.  Again, I
12   think that it would be very unfair to the defendants in this
13   case to allow that presentation.
14           THE COURT:  First of all, let me ask all of you to
15   address whether eSoft, which I quote in my very brief order of
16   March 12, the four factors in eSoft which is a case that
17   collects other cases, accurately summarizes the factors that a
18   court ought to consider in granting or denying a stay and in
19   re-examination.
20           So you don't have to all run around looking, the
21   factors that eSoft lays out as a conclusion or collection or
22   synthesis of case law are:  (1) Whether a stay will simplify
23   the issues and the questions and streamline the trial;  (2)
24   Whether discovery is complete and whether a trial date has been
25   set;  (3) Whether a stay would unduly prejudice the nonmoving
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```
                                                                        27

86KUGENC
```
 1   party or present a clear, tactical advantage for the moving
 2   party;  (4) Whether a stay will reduce the burden of litigation
 3   on the parties and on the court.
 4           Are those the factors that I should focus on, Mr.
 5   Reppert?
 6           MR. REPPERT:  Yes.  I don't think that there is any
 7   question, the courts have set forth those various factors.  I
 8   don't happen to have a complete recollection of that case at
 9   this point.  I think the issue of prejudice is being
10   highlighted by some of the cases being the leading factor.
11           THE COURT:  Let me hear from the defendants.  Are
12   those the relevant factors?
13           MR. BELUSKO:  Your Honor, I have seen it presented in
14   three factors and four factors, but I think that basically it
15   encompasses the same thing.
16           MR. RAINEY:  We agree.
17           THE COURT:  So I think, Mr. Reppert, that, one of the
18   issues that is really not directly called for under the
19   four-factor test is whether the party opposing re-examination,
20   the weight of their validity arguments, as distinguished from
21   argument in response to the Patent Office's determination of
22   there being a substantial question -- maybe it comes in some
23   other way.
24           What I am going to invite you to do, Mr. Reppert, is
25   focus on the four factors.  If you want to lay out the
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```
                                                                        28

86KUGENC
```
 1   prejudice to your client, tell me more about it, make a proffer
 2   on that subject, that's fine.
 3           MR. REPPERT:  I would actually call Mr. Ben-David to
 4   the stand.  He is the president of the company.
 5           THE COURT:  That's fine.
 6   ILAN BEN-DAVID,
 7        called as a witness by the plaintiff,
 8   having been duly sworn, testified as follows:
 9   DIRECT EXAMINATION
10   BY MR. REPPERT:
11   Q.  Mr. Ben-David, where do you reside?
```
                          Page 13

86KUGENC.txt
```
12   A.   I reside in Israel.
13   Q.   What is your employment?
14   A.   I am employed in Genoa Color Technologies.
15   Q.   What is your job there?
16   A.   I am the CEO of the company.
17   Q.   Can you tell me what your involvement was -- when did you
18   first become involved with Genoa?
19   A.   Actually, I am the inventor of the basic technology of
20   Genoa, so I was involved with Genoa from the start.
21   Q.   When was the start?
22   A.   The inception of the idea was summer in 1999, and later the
23   idea was the developed and once we understood there is a market
24   for this idea, we set up the company, me and two other
25   partners.  It was set, I think, in October 13, 2000.
```
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                           29
     86KUGENC              Ben-David - direct
```
1    Q.   Can you describe, generally speaking, what the business of
2    the company is?
3    A.   The company has developed a technology to significantly
4    improve the color performance of displays.  We started more in
5    professional displays, but then we moved to consumer displays.
6    Of course, when you work in consumer market, the market is huge
7    so you don't do your own production.  You license your IP.
8    That is the only business model that you can work with those
9    big companies.  So we are an IP licensing company.
10   Q.   When you started the company, how did you capitalize it?
11   How did you get money?
12   A.   By VCs.
13            THE COURT:  I'm sorry?  I didn't hear that.
14            THE WITNESS:  Venture capitalists.
15   Q.   Who are the owners of the company at this point?
16   A.   Most of the company is owned by the VCs, part of it by the
17   employees and I also have a share in the company.
18   Q.   What are the assets of the company at this point?
19   A.   The asset of the company is mainly its IP.
20   Q.   And the patent in issue here, where does that stand in
21   relation to -- how many patents do you have in terms of your
22   IP?
23   A.   I think overall we have eight patents and around, I would
24   say, a range of 100 applications.  But this was our first, the
25   first market we approached.  And as an IP company, you need to
```
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                           30
     86KUGENC              Ben-David - direct
```
1    license.  You need to show that people are licensing your IP.
2    If people are not licensing your IP and they are using it
3    without paying, you are worth nothing because you have no other
4    product.  Your only way to continue to live is license your IP.
5    Q.   In your portfolio IP, how important is this patent, this is
6    the '152 patent that we are talking about in this case?
7    A.   Extremely strong, extremely important.
8    Q.   Why is that?
9    A.   All the other patents that we have are more future market
10   and future revenues, and this is products, infringing products
11   are in the market right now, so it is a real proof that our
12   technology goes into the market, and we think we can get
13   revenues and we should get revenues from this.
14            And, also, the criticality of this patent, this is
15   proof of concept for our business model.  If we cannot collect
16   royalties on the patent that we have, I think it is proof it is
```
                            Page 14

86KUGENC.txt
17    used on the market, basically, nobody on the market will
18    license from us.
19    Q.   Can you describe where Genoa sits in the color field?  What
20    is your contribution has a company been to that field?
21    A.   We were the first to turn this multi-primary idea that you
22    may think about as a simple idea from an idea into a concept
23    that turns into a real commercial product.  That's where we
24    came.  The simple fact that you can mix color, and mix more
25    primers and get more color, I think that is kindergarten
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                    31
      86KUGENC                Ben-David - direct
 1    physics.  The fact how you make this into a real product, how
 2    you collect the element and create a real product, nobody have
 3    done this before.  We were very focused on going to product and
 4    we have all of the ingredients that we need to create the
 5    product.
 6    Q.   If there is a stay in this case, if this case just stops
 7    and we have to wait for the Patent Office to decide on
 8    re-examination, what is going to be the effect on your company?
 9    A.   The effect will be simple.  As I have discussed our other
10    patents are future market, so my CV, my investor heavily relies
11    on the results of this trial.  Basically, if this is stopped,
12    there is no proof to our business model.
13    Q.   And, financially, what is the consequence for your company?
14    A.   The company will be shut down.
15    Q.   Have you had a discussion with your investors as to the
16    importance of this case?
17    A.   Indeed.
18    Q.   And what is that?
19    A.   They are extremely important.  They are following this very
20    closely.  I have a board subcommittee that is working with me
21    and following that very, very closely.
22    Q.   Have you had a chance to evaluate the prior art that is
23    being asserted by the defendants in this case?
24         MR. RAINEY:  Your Honor, I just heard you say that we
25    are not going to be getting into these validity issues.  This
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                    32
      86KUGENC                Ben-David - direct
 1    sounds like a back door attempt to try to get this individual
 2    to opine on the prior art.
 3         MR. REPPERT:  Your Honor, I think that it is within
 4    the scope of the four factors or the way they could be
 5    reasonably interpreted.  There may be no case that sufficiently
 6    said likelihood of success is a factor in terms of invalidity
 7    analysis but it seems to me that, as an equitable
 8    consideration, it is highly important factor that a court
 9    should apply.
10         THE COURT:  You really want me ruling on likelihood of
11    success on re-examination?
12         MR. REPPERT:  I am just saying that that is something
13    that the Court should import as a test in terms of whether or
14    not the stay should occur.
15         THE COURT:  I am going to give you a little bit of
16    latitude with this witness.
17         Go ahead.
18    BY MR. REPPERT:
19    Q.   Just generally speaking, are you familiar with the prior
20    art being asserted against the patent?
21    A.   Yes, I am familiar.
                              Page 15

86KUGENC.txt
```
22  Q.  Do you know about Kagawa?
23  A.  Yes.
24  Q.  Do you have a view as to whether Kagawa invalidates your
25  patent for anticipation?
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    33
    86KUGENC                  Ben-David - direct
```
1   A.  I looked on it very carefully, actually, claim by claim,
2   also working with other people.  And to the best of my
3   understanding Kagawa does not anticipate the system that we
4   present.
5   Q.  What does Kagawa teach, as you understand Kagawa?
6   A.  Kagawa teaches multi-primary color wheel, but it does not
7   teach the full system.  Actually, you need a TV to plug in the
8   signal and you need to see an image.  This does not exist in
9   Kagawa.
10  Q.  I am showing you the '152 patent, Exhibit 3B.  Do you see
11  that on the screen?
12  A.  Yes.
13  Q.  What does that show?
14  A.  It shows, first of all, the optical system.
15  Q.  Where is the optical system, if you could just direct --
16  A.  It is on the left side.  We have the light source, the
17  color wheel, 56, which is the mirror array or the SLM array,
18  and 58 is the projection lens and 68 is the screen.  So this is
19  the optical --
20  Q.  So is it fair to say this is the optical side here?
21  A.  Right.
22  Q.  What is the other side?
23  A.  The other side is the electronic system.  It accept
24  standard TV or video data and do the transformation through the
25  multi-primer and then drives the SLM.
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    34
    86KUGENC                  Ben-David - direct
```
1   Q.  Does Kagawa teach this whole thing?
2   A.  Kagawa teaches only the optical.
3   Q.  It only teaches what' inside; it doesn't teach the whole
4   data transformation side?
5   A.  Right.
6           MR. REPPERT:  I don't happen to have Kagawa in front
7   of me.  I would refer to the Court to the preliminary statement
8   of our expert -- it was part of the our response to their
9   request for a stay.  And we are essentially making the argument
10  at that point that the likelihood of success in some way should
11  be put on the scale.  And that was the reason why we put that
12  in.  We talked in some detail as to why this is the case.
13          The Kagawa reference, it just doesn't teach the whole
14  thing and the PTO doesn't get it yet.  We have not been able to
15  explain this to them.  They don't really don't understand
16  Kagawa -- Kagawa has a color wheel.  That's all they are
17  saying, that all of these references have a color wheel.  That
18  is only the display part of that.  There is nothing new about
19  the display.
20          The marrying of the color wheel plus the data
21  conversion is what the invention is all about.  And when we get
22  to the claim instruction, you will see how that is exactly what
23  they are claiming.
24          THE COURT:  And you are referring to the preliminary
25  expert witness evaluation of patent validity issues by
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            Page 16

86KUGENC.txt
(212) 805-0300

86KUGENC                    Ben-David - direct
1  Dr. Silverstein which you transmitted to the Court on May 3?
2              MR. REPPERT:  That's correct.  So it does spell it out
3  in some detail.  I don't want to get into any more detail.
4  BY MR. REPPERT:
5  Q.  Let's talk about Poradish.  Was that a new reference, or
6  was that cited to the patent.
7  A.  I believe it was cited.
8  Q.  Do you happen to remember Poradish offhand, if you can
9  remember?
10 A.  No, I don't remember.
11 Q.  Is there anything else that you think would be pertinent
12 for the Court to know in terms of the issue of prejudice as to
13 why the stay should not be granted?
14 A.  I think what I discussed, it is pretty clear, I hope.
15             MR. REPPERT:  I have no questions for this witness.
16             THE COURT:  Thank you, sir.
17             Cross-examination.
18             MR. BELUSKO:  Your Honor, can you give us 10 minutes
19 just to put our thoughts together and we will do it together.
20             THE COURT:  I will give you three minutes.
21             MR. BELUSKO:  OK.  Good enough.
22             (Recess).
23             THE COURT:  All right.  You may cross-examine.
24             MR. BELUSKO:  Thank you, your Honor.
25 CROSS EXAMINATION
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

86KUGENC                    Ben-David
1  BY MR. BELUSKO:
2  Q.  Mr. Ben-David, in connection with your company, is it true
3  that you had developed a product that was a chip, a cachette
4  chip?
5  A.  Yes.
6  Q.  And that chip, does that have anything to do with DOP?
7  A.  It could be used with the DOP.
8  Q.  And that product never went anywhere, right, it failed?
9  A.  We signed an agreement with Phillips and this chip was
10 designed to go into, to connect to their system and Phillips
11 shut up the project.
12 Q.  Shut it down?
13 A.  Yeah.
14 Q.  That was an effort to do something commercial that just
15 failed by you?
16 A.  Yeah.  Phillips shut down the project, not connected to our
17 technology.
18 Q.  You said that Genoa was the first company to develop a
19 commercial project using the technology, and I think that you
20 referred to what was up here.  What project was that?
21 A.  A commercial concept, not a commercial product.
22 Q.  So there was never any product actually made by Genoa?
23 A.  There were samples of product, but never a commercial
24 product offered in the market.
25             MR. BELUSKO:  Your Honor, may I have this switched so
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

86KUGENC                    Ben-David
1  that I can use the Elmo?
2              THE COURT:  Sure.  I wouldn't know how to do it.
                         Page 17

86KUGENC.txt
```
 3              You may all be owing royalties to the Phillips v.
 4   Iwasaki people on use of their technology here.
 5              I see you brought some of your own.
 6   BY MR. BELUSKO:
 7   Q.   Let me ask you, Mr. Ben-David, is it correct that Genoa has
 8   never received any revenue from any company in connection with
 9   the '152 patent?
10   A.   That's not true.
11   Q.   Has it ever been licensed to anybody?
12   A.   As I said, we had an agreement with Phillips.
13   Q.   And when did that agreement end?
14   A.   I don't exactly remember when they shut down their
15   division.  I think maybe 2004.  I don't exactly remember.
16   Q.   When did the '1522 patent issue?
17   A.   2006.
18   Q.   So it was before the '152 patent issued that Phillips
19   stopped work in this area, is that correct?
20   A.   Yes.
21   Q.   You never received any revenues in connection with the '152
22   patent from any source?
23   A.   Yes.
24   Q.   Now, you put up a drawing from the patent before and you
25   understand that is a drawing in the specification, right?
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

38

86KUGENC                    Ben-David
```
 1   A.   Yes.
 2   Q.   That was a preferred embodiment, the best way that Genoa
 3   knew how to implement the investigation, is that right?
 4   A.   Yes.  You have to understand that there are many
 5   combinations, so this is a typical one.  You have an optical
 6   system and a electronic system so that you can play with the
 7   complement.  You have many degrees of freedom to do basically
 8   the same thing.
 9   Q.   In connection with that, you mentioned that it showed
10   conversion, is that correct?
11   A.   Yes.
12   Q.   In connection with the majority of the claims in the '152
13   patent -- I will put up claim 1 -- there is no requirement of
14   conversion, is there?
15   A.   The Claim 1, basically describe a device that projects more
16   than four primary image and have a three-color image.
17   Q.   But Claim 1 doesn't require converting at all, does it?
18   A.   It is implied inside but --
19              THE COURT:  It is implied -- say the word you said
20   after the word --
21              THE WITNESS:  What I am saying, Claim 1 claims a
22   device that have a three-primary input and project an image
23   with more than five primaries so the conversion happens inside
24   the device.  The claim itself, if you take this claim and check
25   the device, you have to check only there is three primaries in
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

39

86KUGENC                    Ben-David
```
 1   and four primaries or more are projected.
 2   Q.   But the claim language doesn't say anything about three
 3   primaries in it, does it?
 4   A.   No, it says.
 5              THE COURT:  No, it does say that?
 6              THE WITNESS:  Just a second.
 7              In accordance with the data signal to produce said
```
Page 18

86KUGENC.txt
8   color image, the data signal, if you look into the
9   specification, you will see it is a three-color data.
10          THE COURT:  A three-color --
11          THE WITNESS:  -- data signal.  That is a standard.
12          THE COURT:  Stop, stop.
13          When I ask you to repeat something, it is because I
14  didn't hear the word.  We have a court reporter who has to take
15  down verbatim what you say.  And I may need an explanation -- I
16  probably will need some explanations but I will let you know
17  when I need an explanation, OK?
18          THE WITNESS:  All right.
19          THE COURT:  You are doing fine.  Just relax.
20          Go ahead.
21  BY MR. BELUSKO:
22  Q.  But there is nothing stated in that claim that says a
23  three-color input, is there?
24  A.  It is data signal has to be a three-color input.  That is
25  the video signal.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                                40
    86KUGENC              Ben-David
1   Q.  And there is nothing in that claim that requires
2   conversion, is there?
3   A.  The claim doesn't specify conversion.  It is in the device
4   itself internally.  There is a conversion.
5           Let's say you bring me a device.  I go to this claim.
6   I check it.  So I check one by one the whole complement.  And
7   in terms of your question, basically I check, OK, I have a
8   three-color input, RGBY, basically, and more than -- four and
9   more color output image.  That's what I have to check.  And if
10  the device have it, the claim is covered.  The device may have
11  a conversion, but I don't need to verify there is a conversion
12  inside the device according to this claim.
13  Q.  As a matter of fact, in plaintiff's reply brief in
14  connection with the claim construction here, Genoa's position
15  very specifically is that Claim 1 does not claim conversion,
16  right?
17  A.  Yes.  As I said, I am not checking -- at least from my
18  point of view as an engineer, when I have a claim, I have a
19  device.  I have my list.  I go V, V, V, 1.  So if I read this
20  claim, I don't have to look for the conversion system that may
21  be in the device.  I just check the output and the input and,
22  of course, the other complements.
23  Q.  In connection with Kagawa, it had an input and output; it
24  had more than three primaries, right?
25  A.  What is the input to Kagawa?
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                                41
    86KUGENC              Ben-David
1   Q.  So in connection with Kagawa, it showed a six-color wheel,
2   correct?
3   A.  Yeah.
4   Q.  And the six-color wheel was the very issue that was raised
5   in connection with the '152 patent by the Patent Office in
6   permitting you to get that claim, right, that nobody else
7   showed more than three colors on a color wheel?
8   A.  I am not so familiar with all the file history, so I don't
9   know.  But I believe that what we have shown is the full
10  system, both the electronics and the optics.  So trying to
11  split things --
12  Q.  But Claim 1 doesn't require the full system, you just told
                            Page 19

86KUGENC.txt
13    us that.  It doesn't require any conversion.  It is only Claim
14    8 that first raises the converting feature, right?
15    A.  I am not the patent person, but from what I understand
16    Claim 1, if I take a device, I know how to check the claim
17    conforms to Claim 1.
18    Q.  That is interesting.  You say you were not a patent person.
19    What is your understanding of 1 and 2 anticipation?
20    A.  Not much.
21    Q.  And what is your understanding of 103 nonobvious?
22    A.  All of those -- I am not familiar with the patent law.  I
23    am not saying I didn't hear, but I am not familiar about those
24    issues.
25    Q.  So you are not really familiar whether Kagawa anticipates
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                                                                    42
      86KUGENC                    Ben-David
1    or makes obvious your claims, are you?
2    A.  I only saw the drawing, and I refer to the drawing and what
3    Kagawa describes to our system.
4    Q.  So you claim, you compared then the drawing of your
5    preferred embodiment --
6    A.  Also the idea of the text.
7    Q.  Drawing to drawing and the specification describing it?
8    A.  Yeah.
9    Q.  Thank you.
10           Now, there was a reference made here that Genoa is
11    unwilling to amend its claims in any way in connection with the
12    re-exam.  Why is that?
13    A.  This was a position -- I don't know.
14    Q.  So that really isn't Genoa's position that you are
15    unwilling to amend the claim in the current re-exam?
16    A.  I don't believe that they will need to be amended.  That is
17    my understanding.
18    Q.  But if the Patent Office indicates they need to be amended
19    Genoa is willing to do that?
20    A.  I will set Genoa position based on the advice of my
21    lawyers, OK.  I am an engineer and not --
22           MR. BELUSKO:  I have no further questions for the
23    witness.
24           THE COURT:  All right.
25    CROSS EXAMINATION
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                                                                    43
      86KUGENC                    Ben-David - cross
1    BY MR. RAINEY:
2    Q.  Good morning, Mr. Ben-David.
3    A.  Good morning.
4    Q.  I have a few questions for you on behalf of the Samsung
5    defendants who I represent.
6           You mentioned that you studied the Kagawa reference.
7    When did you learn about the Kagawa reference?
8    A.  Whether when it was new -- it didn't appear in our prior
9    art and before I received it from you, I knew only what or saw
10    only what was in our prior art as specified in the '152.
11    Q.  You mentioned that the '152 patent is, in your view, a
12    proof of concept for Genoa, is that correct?
13    A.  Yes.  In many respects, yes.
14    Q.  You mentioned that your investors are monitoring this
15    lawsuit to see whether there is validity to your proof of
16    concept, is that fair?
17    A.  Yes.
                            Page 20

86KUGENC.txt
18  Q.  Are your investors also interested in what is going on at
19  the Patent and Trademark Office?
20  A.  They are following all of the situation and I am updating
21  them on what is going on.
22  Q.  So whether this lawsuit is stayed or not is not going to
23  have any impact on what is going on in the PTO; that process
24  will continue regardless of what happens here?
25  A.  Yes.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

44

86KUGENC              Ben-David - cross
1   Q.  So your investors must be just as concerned as what is
2   going on at the PTO as they are with what is going on here, is
3   that fair?
4   A.  They are concerned.  They have seen the work that we have
5   done and their analysis.  And I believe they agree with our
6   analysis.
7   Q.  And the very agency that issued your patent which you call
8   your proof of concept has now told the world that there is a
9   substantial new question of patentability as to that proof of
10  concept, isn't that true?
11  A.  I believe that as explained, I know the prosecution process
12  is extremely long and we will see.  When I received those
13  orders, I didn't -- I know it is a long process, and we haven't
14  described and gave -- we have not received an office action and
15  we didn't explain to examiner our position, so I don't think it
16  says much right now.
17  Q.  Who is paying the expenses for Genoa in this lawsuit?
18  A.  Of course, our investors.
19  Q.  Are they paying attorney's fees as well?
20  A.  Indeed.
21  Q.  If this case were stayed, the expense or the attorney's
22  fees would decrease dramatically for Genoa, would they not?
23  A.  I don't think so.  I don't think so.
24  Q.  Why is that?
25  A.  I think overall we will continue with the process of the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

45

86KUGENC              Ben-David - cross
1   office action. Let me say like that.  Actually, if this case
2   was stayed, the process will be very long.  Our investors are
3   not looking for only to save those expenses, but they are
4   looking for proof of concept of the business model and that
5   will make the proof of concept much further along the way.
6   Q.  But regardless of what happens in this lawsuit, the PTO is
7   going to continue this process of investigating the validity of
8   your claims of patent?
9   A.  Yes.  We have reviewed and also I have updated my investor
10  and they understand the situation.
11  Q.  And your investor understands that if Mr. Reppert is
12  correct and Kagawa, for example, doesn't render the claims
13  unpatentable, that that issue will be out of this lawsuit, the
14  issues will be greatly simplified by that process?  Do your
15  investors understand that?
16  A.  I don't know what they understand.  I know I explain to
17  them what my lawyers tell me, simple.
18  Q.  How many additional investors have you approached about
19  funding?
20      MR. REPPERT:  Additional or initial?
21  Q.  Additional investors beyond the ones that you currently
22  have?

Page 21

86KUGENC.txt
```
23  A.  I tried to approach several investors.
24  Q.  And who are they?
25  A.  I don't have the names here.  I can give you.
```
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
                                                                    46
       86KUGENC              Ben-David - cross
```
 1  Q.  How many?
 2  A.  It is below 10.
 3  Q.  Where are these investors located?
 4  A.  Some of them are located in Israel -- most of them in
 5  Israel.
 6  Q.  You are aware, are you not, Mr. Ben-David that there is
 7  quite a burgeoning industry in the United States of investors
 8  putting capital into plaintiff patent litigation, which appears
 9  to be now the business of Genoa?
10  A.  I don't know if there is such an industry.
11  Q.  You have not looked into that?
12  A.  At the time we were looking into such thing, and we haven't
13  found and our investors are financing this litigation effort.
14  So it is part of the company operation, I would call it.
15  Q.  Are you paid a salary by Genoa?
16  A.  Yes.
17  Q.  How much is that salary on an annual basis?
18  A.  Annual, it is $9.5K per month, so you can multiply.
19  Q.  $95,000 a month?
20  A.  Yes.  You can multiply it.
21  Q.  How many other employees does Genoa have on its payroll?
22  A.  The number, it is about six or seven.
23  Q.  And what is the annual payroll of Genoa, ballpark?
24  A.  My salary is pretty representative, which means that
25  although I am CEO, my salary is not significantly higher than
```
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
                                                                    47
       86KUGENC              Ben-David - cross
```
 1  the others.
 2  Q.  So you have six people making $95,000 a month at Genoa?
 3  A.  Yes.  Something like that.  It is lower number because some
 4  of them are half paid.
 5          THE COURT:  What do you mean by half paid?
 6          THE WITNESS:  They work 50 percent of the time.
 7          MR. RAINEY:  I have no further questions.
 8          THE COURT:  Mr. Reppert.
 9  RECROSS EXAMINATION
10  BY MR. REPPERT:
11  Q.  When you say $95,000 a month, is that what you meant?
12  $95,000 a month?
13  A.  I wish.  $9,500 a month.  I wish -- the decimal point --
14  Q.  If the case is stayed, what is the financial implication
15  for your company?
16  A.  Basically, it means that revenue will go very far and also
17  the chances for revenue because the rest of the industry is
18  looking on this trial.  And I guess the company will be even
19  more significantly reduced and maybe totally shut down.  Minor
20  activity will stay, but maybe shut down in practical matters it
21  will be closed.
22          MR. REPPERT:  No further questions.
23          THE COURT:  Thank you, sir.
24          You may step down.
25          (Witness excused)
```
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
                            Page 22

86KUGENC.txt

86KUGENC

1      THE COURT:  Is there anything further that you want to
2  present on the issue?
3      MR. REPPERT:  No.  Other than just to, I guess refer
4  the Court to the papers we filed before at the time of your May
5  consideration which are essentially the same arguments that we
6  made before.
7      THE COURT:  All right.
8      Is there anything the defendants wish to present on
9  the stay issue?
10     MR. BELUSKO:  Your Honor, I think in addition to what
11 we presented before, we are at the point now where we have not
12 just filed a request, but we now have three separate requests
13 that have been granted by the PTO involving at least seven
14 independent grounds for invalidity of the claims here.
15     This isn't speculative in the sense that certain of
16 the PTO believes that there is a substantial issue of
17 patentability and it certainly isn't speculative that we are
18 going to have a lot of activity in the PTO which is going to
19 add to the file history that exists in this case and inevitably
20 is going to affect the claim construction in this case.
21     So we think, in terms of the claim construction, as
22 Mr. Rainey said, we are shooting at a shifting target now and
23 there is certainly no reason to go forward with claim
24 construction.
25     As far as discovery, I have to agree with Mr.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

86KUGENC

1  Reppert -- amazing as that may be -- it is a total waste
2  without claim construction to be able to go forward with expert
3  discovery.  We were dealing with permutations of what ifs and
4  what claims, etc.
5      But I also have to say that is true of fact discovery
6  too, your Honor.  Until we really have a good claim
7  construction and one that was set up in this case to at least
8  give us some guidance, doing a lot of discovery of claims that
9  may or may not ever come out is just very wasteful of resources
10 of the parties, counsel, and it creates a big hassle for my
11 clients and I believe for my co-defendants' clients as well.
12     So we think that a stay is appropriate.  It should be
13 done now as to everything.  And under these factors, it is
14 timely now to do it.  And from what we have heard, this is not
15 a company that is deriving any revenues currently from this at
16 all.  And that prejudice, whatever it is because they haven't
17 somehow met their business objective, I don't know that can be
18 blamed on us as companies marking commercial products, but that
19 is far outweighed by what is occurring here and the other
20 factors.
21     THE COURT:  Anything?
22     MR. RAINEY:  Nothing to add to that, your Honor.  I
23 agree completely.
24     THE COURT:  Mr. Reppert, I am going to give you the
25 last word.  Anything further?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

86KUGENC

1      MR. REPPERT:  I just would repeat that the status of
2  the PTO proceedings is extremely preliminary.  We are confident
3  that we made a small showing here relating to the prior art.

Page 23

86KUGENC.txt
4  We are confident that we are going to beat them, will show that
5  the patent is valid.
6          When they describe the prior art in their initial
7  statements that you referred to, they didn't -- it clear that
8  they didn't understand the nature of the invention.  And we are
9  confident that we are going to be able to prevail on that
10 score.
11         There is very substantial prejudice with the company
12 being shut down, as Mr. David says, if the case is stayed.  For
13 all the considerations in the case that you cited, plus the
14 further potential consideration of the merits of the invalidity
15 or validity case, we believe that in the interests of equity, a
16 stay should be denied.
17         THE COURT:  Thank you, Mr. Reppert.
18         This is a patent infringement action that was
19 commenced by plaintiff, Genoa Color Technologies, on July 5,
20 2007.  Pretrial discovery has proceeded in the action.  And I
21 indicated to the parties that I would have a claim construction
22 hearing in this case today.  The parties have briefed the issue
23 and, in connection with the hearing, I familiarized myself with
24 the defendants' tutorial and the plaintiff's submission.
25         I held a pretrial conference in this action on March
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                    51
86KUGENC
1  12, 2008 and considered the defendants' then application for
2  staying the action pending an inter partes re-examination
3  proceeding before the United States Patent and Trademark
4  Office.
5          At the time I denied the application for a stay.  I
6  recognized that the re-examination proceeding could simplify
7  the issues, but at the time I viewed the prejudice to the
8  plaintiff to be substantial, in part because it appeared to me
9  that the proceedings before the U.S. PTO could be lengthy and
10 could be an endless exercise, whereas it would be feasible for
11 me to complete discovery and maybe bring this action on for
12 trial.
13         What has changed in the interim is severalfold.
14         Number 1, I have a better understanding now of the
15 claims in issue in light of the preparation that became
16 necessary for me to engage in, in getting ready for the claim
17 construction proceeding.  Those are the practical realities of
18 life here.  I understand the complexity of the subject matter
19 and the prior art at issue much better than I did before and
20 have a greater awareness of the nature of the claims from
21 having to review them.
22         Also, since the time that the parties got together in
23 March, there was an order granting a re-examination request
24 issued by the Patent Office.  This is on May 2, 2008.  And it
25 raises what the patent examiner and his two conferrees describe
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                    52
86KUGENC
1  as substantial new questions of patentability.
2          I have spent time with this document in going over it
3  and note, for example, on page 7, that there are seven areas
4  where the PTO now sees significant new questions.  They
5  rejected one of the new questions.  This has caused me to now
6  go back and look at the two prior grants for re-examination in
7  this case and look at it anew and through a new lens.
8          This morning I entertained an extensive argument from
                              Page 24

86KUGENC.txt
9    the parties and allowed, in fact, the parties to put on
10   evidence with regard to what I will call the eSoft factors
11   which is a reference to eSoft, Inc. v. Blue Coat Systems, 505
12   F.Supp.2d 784, District of Colorado 2007.
13           The reason I cite to eSoft is because the district
14   court there did a very fine job of collecting, synthesizing and
15   summarizing precedent on the issue of grant or denial of stays
16   pending re-examination.  And, indeed, in argument before me
17   this morning, the parties indicated that the four factors
18   outlined in eSoft are relevant to my determination.
19           The first factor is whether a stay will simplify the
20   issues in question and streamline the trial.  It is now clear
21   to me that that is the case.  The claims in issue may look
22   different after re-examination.  Indeed, there may be issues
23   with regard to prior art and invalidity which could in fact
24   obviate the need for a trial.  I don't know whether that will
25   happen, but there is a finding of a substantial new question
              SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                              53
♀
86KUGENC
1    and so I can comfortably say that it will simplify the issues
2    and it may simplify the issues and streamline the trial.
3            Whether discovery is complete and whether a trial date
4    has been set, that's the second factor.  The simple answer is,
5    there is no trial date set in this action.  As to discovery
6    being complete, there is a discovery schedule in place which,
7    depending on the speed with which the Court could rule on claim
8    construction, could have fact discovery in this case ending
9    this fall and expert discovery ending December 31, 2008.
10           My experience in the patent arena suggests to me that
11   with regard to a patent action of this complexity filed now
12   less than a year ago, that this schedule may be somewhat
13   optimistic and, as the parties seem to acknowledge, is
14   dependent on the Court being able to rule on the claim
15   construction issues with considerable speed.
16           I now know, having looked at the submissions of the
17   parties, that the claim construction issues -- not all of
18   them -- some of them are simple and straightforward but some of
19   them are anything but simple and straightforward.
20           So there haven't been any merits depositions taken.
21   The discovery that has taken place has been in the arena of
22   getting ready for claim construction.
23           Third, I have taken a look at whether the stay would
24   unduly prejudice the non-moving party, Genoa Color
25   Technologies, the plaintiff, or present a clear tactical
              SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                              54
♀
86KUGENC
1    advantage for the moving party.
2            With regard to clear tactical advantage, there is
3    clearly a benefit to the defendants from having this action
4    stayed.  There is no question about that, but there is also a
5    prejudice to the moving parties in not staying the action
6    because the discovery that would go on could ultimately prove
7    to be needless and a waste of time and money.
8            The plaintiff is a patent holder.  I take the claims
9    of prejudice to the plaintiff seriously.  The plaintiff has
10   investors, venture capital firms that have put capital into
11   plaintiff's business.  I don't lightly consider granting a stay
12   in this case.  But this is a situation where plaintiff is an
13   intellectual property company.  It is not a manufacturing
                       Page 25

86KUGENC.txt
14    operation.  It has six or so employees, some of whom are
15    part-time.  And this action is going to take, whether it
16    proceeds here in the PTO or this court waits for the PTO to act
17    and then acts, it is going to take awhile for this action to
18    see its way through to completion.  I would say that would
19    likely be the case whether or not a stay is granted.
20         So there is prejudice to any non-moving party in
21    staying a patent infringement action.  There is no unusual
22    prejudice and undue prejudice in this case.  Genoa Color
23    Technologies does not happen to practice the invention.  It
24    does not manufacture.  It was in the licensing business.  And
25    so it is not as if it is in the marketplace selling the product
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    55
86KUGENC
1     up against accused products that are being sold in competition
2     and perhaps driving down the price of a product.
3          So prejudice is there, but in the overall context, I
4     now conclude, having heard the CEO of plaintiff, that the
5     prejudice is not undue prejudice.
6          The fourth factor is whether the stay will reduce the
7     burden of the litigation on the parties and on the Court.
8          Here, this is a strong factor tipping in favor of a
9     stay because we will know what claims survive re-examination.
10    We will know the view of the Patent Office with regard to the
11    prior art references, several of which were not before the
12    patent examiner at the time the claims in the patent were
13    allowed, the '152 patent.
14         So, on balance, I have concluded that a stay of this
15    action is appropriate.
16         I am going to require the parties to report to me by
17    December 31, 2008 as to the status of proceedings before the
18    United States Patent and Trademark Office.
19         I will set a date for those submissions of December
20    19, 2008.
21         Just as I reserved the right, the ability to
22    reconsider the issue of the stay -- and I have reconsidered it
23    at this juncture -- I continue to reserve the right to do so
24    and, depending on changing circumstances, would entertain an
25    application to vacate or modify the stay, based on events that
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    56
86KUGENC
1     may transpire in the future.
2          I should also note that I was impressed with the speed
3     with which the PTO acted.  This particular re-examination
4     request was, according to my recollection, filed in or about
5     February of 2008, and the extensive order, 15 pages in length
6     discussing the prior art, was issued by early May.
7          So that is where we are.  The stay is granted.
8          What else, Mr. Reppert?
9          MR. REPPERT:  I guess it doesn't make much sense to go
10    forward with claim construction at this point, so we will
11    report back and see you in December.
12         THE COURT:  Anything from the defendants?
13         MR. BELUSKO:  No, your Honor.
14         MR. RAINEY:  No, your Honor.
15         THE COURT:  Thank you all.
16
17                         o   0   o
18
                            Page 26

86KUGENC.txt
```
19
20
21
22
23
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

♀

57

```
 1                         INDEX OF EXAMINATION
 2    Examination of:                              Page
 3    ILAN BEN-DAVID
 4    Direct By Mr. Reppert  .  .  .  .  .  .  .  .  .  .    28
 5    Cross By Mr. Belusko  .  .  .  .  .  .  .  .  .  .    36
 6    Cross By Mr. Rainey  .  .  .  .  .  .  .  .  .  .  .    43
 7    Recross By Mr. Reppert  .  .  .  .  .  .  .  .  .  .    47
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

♀