# EXHIBIT A

**Intellectual Asset Management** Magazine
Maximising IP value for business



Case 1:07-cv-06233-PKC    Document 61-2    Filed 07/17/2008    Page 3 of 4

**Re-exam report authors come out of shadows to provide more information**

The blog I ran a couple of days on the Institute for Progress's report "Reexamining Inter Partes Reexam" has been picked up and commented on by a few other IP news sources, including the 271 blog and PatentlyO, as well as Hal Wegner's off-line email service. The authors of the report – who I can reveal are Ralph Eckardt and Mark Blaxill, formerly in charge of the IP strategy consulting practice of the Boston Consulting Group - have also fielded quite a few emails via their website, which is still under development.

Ralph and Mark have been back in touch with me to clarify a few points about the coverage the report has received. This is what they have to say:

After your initial post, the story was picked up by several of the other popular IP blogs, and we have received numerous requests for copies of the report, and more information via our website. We've engaged in a lively dialogue with a number of folks who have contacted us through the site. It seems that our brief report has touched on an issue that is important to many in the IP community.

It's not surprising really. In the US, patent re-examination and the relationship between the re-exam process and patent litigation (including actions at the ITC) have become important issues: both for technology suppliers (in all their forms), who rely on strong patent protection, and technology users, because the price they pay for access to technology depends on the strength of their suppliers' ownership rights.

Ironically, on the same day as your blog post, Judge Payson from the Western District of New York issued a stay order in the case of Bausch & Lomb v Rexall Sundown. The stay was granted because of an inter partes re-exam that is now underway at the USPTO. In this case, and this is not at all unusual, the request for reexam came from Rexall, the defendant in the litigation. The defendant has convinced the judge to allow the Patent Office to decide on validity rather than the court.

The problem with this from our perspective is that judges often rely on the intention that re-exams will be conducted with "special dispatch", and the only facts most judges have at their disposal are the statistics published by the Patent Office that suggest that the re-exam will take about 28 months. This unexamined, and as it turns out, erroneous assumption has led to stays being granted in a number of important cases. As our report shows, the average time that the patent office takes to resolve the validity question in inter partes re-exams is 3 ½ years, and that assumes that the examiner's decision is not appealed. If there is an appeal, the final resolution could take 5-8 years.

*A clarification*

There is one point that we would like to clarify about the way that our report has been characterised. You and other bloggers have picked up on our statement that "the pendency statistic provided by the USPTO is highly misleading". We want to make it clear that we are NOT accusing the patent office of intentionally misleading anyone. Their calculation of average pendency is simple, straightforward and mathematically correct. In fact, it's the same calculation that they use to report pendency in ex parte re-exams and in traditional patent examinations.

The statistic is misleading in this context because the cases that are included in the sample are currently subject to a strong selection bias. In simple terms, the sample of completed cases that has been used to calculate the average pendency period includes too many unopposed cases, cases that make it into the sample precisely because they went through the process quickly. By contrast, relatively few opposed cases, the cases that go through all the re-exam steps, have made it into the sample so far. Without understanding this issue, many people have been misled by the statistic into thinking that the average pendency calculation reported by the PTO sets a reasonable expectation for how long the process will take when cases are opposed. It clearly does not.

Our report on inter partes reexam is simply an analysis of the facts. In the spirit of scientific research, every assertion in the report is testable, and every calculation can be replicated. In fact, for any of your readers who are sufficiently interested in the topic and want to conduct their own analysis, we will happily provide them with the raw transaction data (all of which is publicly available) that we downloaded from the USPTO PAIR system – we'll save them all the hard work. Each bit of data in the database can be verified against the USPTO's system, and they can recreate the analysis for themselves.

If any of your readers would like a copy of the report, or the transaction database, or would like to receive an update when the Institute "goes live", they can contact us at info@instituteforprogress.com.

Also of interest, I think, is what Ralph and Mark have to say about the Institute for Progress, of which they are both fellows: One of the things we've observed is that in many instances, the IP world is full of assertions without information. Too often, it seems, important policy decisions, legal decisions and business decisions are based on beliefs about IP - and its role in business, economies and markets - that are neither consistent with the facts nor based on careful data analysis. That's where the Institute for Progress comes in.

The Institute for Progress is an independent think-tank whose purpose is to provide insight and analysis about the role of intellectual property in promoting "the progress of science and the useful arts". Our aim is to fill the information gap in the public discourse about IP by providing high impact analysis and commentary. As you can see from our website, we hope to become "The Rational Voice on Intellectual Property". That's a pretty audacious aspiration, but one we will work hard to live up to.

My understanding is that other fellows of the institute will be announced in the near future. Some of them, at least, will be very well-known to anyone who follows IP issues.

Joff Wild, IAM Magazine | 23 May 2008

Please log on or register to leave a comment.